UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

|                                                      |                                |
|------------------------------------------------------|--------------------------------|
| **INTERNATIONAL-MATEX TANK TERMINALS-** ILLINOIS, a Delaware general partnership, | Case No. 1:08-cv-1200 |
| Plaintiff,                                           | Honorable Paul L. Maloney     |
| v.                                                   |                                |
| **CHEMICAL BANK**, a Michigan state-chartered bank,  |                                |
| Defendant.                                           |                                |

**Opinion and Order**
("*Matex 2*")

**Denying the Defendant's Motion for Leave to File a Sur-Reply Brief;
Reaffirming that Matters Raised for the First Time in a Reply Brief Will Be Disregarded**

Plaintiff International-Matex Tank Terminals-Illinois ("Matex") operates petroleum and chemical storage facilities in Lemont and Joliet, Illinois. *See* Matex's MSJ, Exhibit ("Ex") A - Affidavit of Matex Sales Manager Mark Engdall dated May 4, 2009 ("Engdall Aff 2") ¶¶ 3-4. In December 2006, Matex executed a written contract wherein it leased a fuel storage tank to non-party General Sales and Service, Inc., d/b/a Torco Racing Fuels ("Torco" and "the Torco contract") for three years, in return for monthly payments from Torco. The contract required Torco to obtain a letter of credit ("LOC") to serve as security for those monthly rental payments. On September 13, 2007, Torco obtained an LOC from defendant Chemical Bank ("Chem") in favor of Matex, with a limit of $200,000 in aggregate "drawing" rights for Matex.

Torco missed numerous monthly rental payments, and by June 2008 it owed Matex more than $28,000. *See* Engdall Aff ¶ 11. Matex sent a Default Letter to Torco on June 19, 2008 demanding payment within fifteen days. When Torco failed to pay, Matex sent a letter on July 18, 2008 stating that it was accelerating payment for the monthly payments that would have come due during the rest of the 3-year contract, for a total of about $274,000. *See* Engdall Aff ¶¶ 11-14 and its Exs. 2 and 3. The lack of payments from Torco caused Matex to present a "draw" on the LOC, in the maximum amount of $200,000, on July 28, 2008. *See* Engdall Aff ¶ 15and its Ex. 4 (the Draw). Chem refused to honor, and continues to refuse to honor, the Draw.

**Matex contends that its presentation of the Draw was proper, triggering Chem's contractual obligation under the LOC to pay $200,000 to Matex.** Matex also contends that Chem failed to notify it, within the time required by the law, of any deficiency in its presentation of the Draw. Accordingly, Matex asserts Michigan common-law claims for Breach of Contract (count one) and Wrongful Dishonor of an Instrument (count two).

The LOC provides, in pertinent part,

[Chem] hereby establish[es] [its] irrevocable standby letter of credit No. 2007-19 in [Matex's] favor effective September 13, 2007 for the account to [Torco] up to an aggregate amount of US $200,000.00 (Two Hundred Thousand and 00/100 U.S. Dollars) available at sight upon [Matex's] demand for payment with [Chem] against [sic] presentation of the following documents:

1. A) I.     Copy(ies) of Original, or telecopies of invoice(s) issued by Matex-Lemont requesting payment from [Torco] and

       ii.     Statement purportedly signed by an authorized representative of Matex-Lemont stating that the drawing amount represents funds due to Matex-Lemont under the accompanying invoice(s) which have not been paid by [Torco] under the leaded racing fuel agreement No. TOR-L1 and that the said invoice(s) remain(s) unpaid at the time of drawing.

Engdall Aff, Ex 1 (LOC). Matex contends that it complied with these LOC terms by providing Chem with copies of its invoices to Torco and a signed statement by an Matex representative that the funds requested represented the amount which Torco owed but had not paid, and it notes that "Chemical Bank has never claimed that the documents provided by Matex in support of the Draw were in any way defective." Matex MSJ at 6 (citing Engdall Aff ¶ 18). Matex notes Chem Bank Vice-President Tim Walling's admission that "Chemical Bank did not notify IMTT of any discrepancy in the presentation of the Draw[.]" Matex Opp/Reply at 2 (quoting Walling Aff (Chem MSJ Ex 1) ¶ 13).

On these bases, Matex seeks summary judgment on count one, breach of contract.

As to Count II, Wrongful Dishonor, Matex contends that under Michigan law, Chem was required to take certain actions within seven business days after Matex presented the Draw:

> An issuer has a reasonable time after presentation, but not beyond the end of the seventh business day of the issuer after the day of its receipt of documents to do 1 or more of the following:
>
> (a)　To honor.
>
> (b)　If the letter of credit provides for honor to be completed more than 7 business days after presentation, to accept a draft or incur a deferred obligation.
>
> (c)　To give notice to the presenter of discrepancies in the presentation.

MICH. COMP. LAWS § 440.5108(2). Specifically, Matex contends that no later than August 6, 2008 – seven business days after Chem received Matex's Draw on July 28, 2008 – Chem was statutorily obligated to either honor the Draw or notify Matex of any discrepancy in its presentation.

In further support of count II, Wrongful Dishonor, Matex invokes the International Chambers

of Commerce's Uniform Custom and Practice for Documentary Credits ("UCP")[1] Article 14(b), which provides that "the issuing bank shall . . . have a maximum of five banking days following the day of presentation to determine if a presentation is complying." Matex contends that once Chem decided not to honor the Draw due to noncompliant presentation, UCP Article 16(c) required it to provide Matex with a *single* notice – not more than one notice – which stated

> I. that the bank is refusing to honor or negotiate; and
>
> ii. Each discrepancy in respect of which the bank refuses to honor or negotiate; and
>
> iii. a) that the bank is holding the documents pending further instructions from the presenter; or
>
> b) that the issuing bank is holding the documents until it receives a waiver from the applicant and agrees to accept it, ro receives further instructions from the presenter prior to agreeing to accept a waiver;
>
> c) that the bank is returning the documents;
>
> d) that the bank is acting in accordance with instructions previously received from the presenter.

In turn, UCP Article 16(d) requires the bank to provide such notice "no later than the close of the fifth banking day following the presentation."

Ultimately, Matex contends that Chem's failure to comply with the notice provisions of state statute and the UCP preclude it from dishonoring the Draw for any reason which it did not specify

---

[1] The LOC provides that it is governed by UCP Publication Number 500. That publication was superseded by UCP Publication Number 600, which Matex cites in its briefs. Matex states that "[a]ny changes between UCP publications do not materially impact [Matex]'s claims." Matex's Opp/Reply at 3 n.2 (citing Ex C and Ex D). Chem has not contradicted this statement, and the court's review of Publications 500 and 600 confirms that the pertinent provisions (Articles 14(b) and 16(b, d and f) are identical from one version to the next.

by proper notice. As for state statute, Matex relies on MICH. COMP. LAWS § 440.5108(3), which provides,

> Except as otherwise provided in subsection (4),[2] an issuer is precluded from asserting as a basis for dishonor any discrepancy if timely notice is not given, or any discrepancy not stated in the notice if timely notice is given.

The commentary to this statutory section states that a bank's "failure to act within the time permitted . . . constitutes dishonor", and it warns that

> [b]ecause of the preclusion in subsection [3] and the liability an issuer may incur . . . for wrongful dishonor, the effect of such silent dishonor may ultimately be the same as though the issuer had honored, i.e., it may owe damages in the amount drawn but unpaid under the letter of credit.

MICH. COMP. LAWS § 440.5108, comment 2.

As for the UCP, Matex relies on Article 16(f), which provides,

> If an issuing bank fails to act in accordance with the provisions of this article, it shall be precluded from claiming that the documents do not constitute a complying presentation.

Matex urges the court to reject both of Chem's affirmative defenses. First, Matex contends that the issue of whether it terminated the Matex-Torco contract is not material, because the status of that contract cannot affect Chem's obligation to honor the Draw. *See* MSJ at 9. Matex relies on

---

[2]
MICH. COMP. LAWS § 440.5108(4) provides,

Failure to give notice specified in subsection (2) or to mention fraud, forgery, or expiration in the notice does not preclude the issuer from asserting[,] as a basis for dishonor[,] fraud or forgery as described in section 5109(1) or expiration of the letter of credit before presentation.

Thus, if Chem failed to timely send a proper notice which specified the alleged presentation defect, it will be precluded from dishonoring the Draw on the basis of that defect. However, Chem's failure to timely send a proper notice which specified fraud or forgery as the basis for dishonor, will *not* preclude it from dishonoring the Draw on the basis of such fraud or forgery.

MICH. COMP. LAWS § 440.5108(4), which provides that "[r]ights and obligations of an issuer to a beneficiary" under an LOC "are independent of the existence, performance, or nonperformance of a contract or arrangement out of which the letter of credit arises or which underlies it . . . .", and on UCP Article 4(a), which provides that

> A credit by its nature is a separate transaction from the sale or other contract on which it may be based and banks are in no way concerned with or bound by such contract(s), even if any reference whatsoever to such contract(s) is included in the letter of credit.

*See* Matex's MSJ at 10-11.

As to Chem's second affirmative defense, Matex contends that its failure to strictly comply with the LOC's presentation rules cannot justify Chem's Bank dishonoring the Draw, because Chem itself failed to comply with the specific notice requirements governing a bank which wishes to dishonor an instrument. *See* Matex"s MSJ at 9 and 11. Namely, Matex notes that Chem never notified it of any "discrepancy" in the presentation within the timeframe mandated by MICH. COMP. LAW § 440.5108(2) and UCP Articles 16(c) and (d). *See* Matex's MSJ at 11-12.

Again regarding Chem's second affirmative defense, Matex contends that its "failure" to present the Draw to Chem's Benton Harbor office as required by the LOC's text is not a "failure" at all, because through past dealings and express representations, Chem led Matex to believe that it could present Draws on LOCs to Tim Walling in the Marshall office. Matex presents Mark Engdall's testimony in support of the allegation that "Chemical Bank affirmatively requested that [Matex] send draws to Chemical Bank's Marshall, Michigan location." Matex Opp/Reply at 3, citing Ex A (Engdall Aff) ¶ 6. Specifically, Matex alleges that a Chem employee named "Ms.

Velvet" directed Matex employee Mark Engdall to send draw requests to Tim Walling in the Marshall office. Matex explains that

> [t]his was not unusual as Chemical Bank had previously honored draws on another letter of credit at the Marshall, Michigan location. * * * As a result of this specific instruction and past practice, Chemical Bank cannot now claim that [Matex] sent the Draw to the wrong location. Chemical Bank's "bait and switch" routine mocks the fundamental principle of good faith and fair dealing that is implied in every contract.

Matex Opp/Reply at 4, citing Ex A (Engdall Aff) ¶¶ 6-7 (other citations omitted). *See also* Matex Opp/Reply at 5-6. Chem responds that the employee in question, Velvet Smith, was never an assistant to Mr. Walling, never worked in Chem's commercial department, never spoke with Matex's Mark Engdall, and lacked actual or apparent authority to direct LOC beneficiaries to present draws to any particular office. *See* Chem's Reply at 2, citing Ex A (Affidavit of Timothy Walling dated May 8, 2009); Affidavit of Velvet Smith dated May 27, 2009 ("Smith Aff") ¶¶ 2-7.

Chem also denies that its standard practice with other LOCs was to accept draws at the Marshall office. *See* Chem Reply at 2. Matex has submitted a record of a July 2007 wire transfer from Chem Bank as proof that Chem honored a draw on a different (2006) Torco-related LOC even though it was presented to an office other than that purportedly required by that LOC's terms. Chem counters with Walling's testimony that the wire transfer in question, for about $3,400, "was not based upon the draw request, but [was] drawn directly from the line of credit of . . . Torco's parent company." Chem Reply at 3, citing Ex A (Affidavit of Timothy Walling dated May 8, 2009) ¶ 9.

On the foregoing bases, Matex seeks summary judgment on count II, its claim for Wrongful Dishonor of the Draw.

For its part, Chem contends that it was entitled to dishonor Matex's Draw because it did not

comply with the LOC documents in two respects. First, Matex did not present the Draw to Chem's office at 823 Riverview Drive in Benton Harbor, Michigan, ZIP code 49022, on or before September 13, 2008, but rather presented the Draw only to Tim Walling at Chem's Marshall, Michigan location. As discussed above, Matex responds that the reason it presented the Draw to the Marshall office instead of the Benton Harbor office specified by the LOC, is twofold: Chem honored Matex's Draw on a prior, unrelated LOC when presented to the Marshall office, and Chem expressly asked Matex to present the Draw to the Marshall office in this case too.

Chem contends that it was entitled to dishonor Matex's Draw because it did not comply with the LOC in a second respect: Matex did not include the original LOC with the Draw, as required by paragraph 7 of its LOC application per Chem's regular business practice. *See* Chem's MSJ at 5-6, citing its Ex A (LOC Application) and Ex B (LOC) and Ex C (Affidavit of Rhonda Mauchmar) ¶ 8 and Ex D (Matex's first Draw Request, dated July 7, 2008); *see also* Chem Reply at 4 ("[Matex] never presented LOC 2007-019 despite being directed to do so by Mr. Walling [a vice-president in Chem's Marshall office]."). Matex responds that

> Chemical Bank's argument that [Matex] was required to provide the original Letter of Credit provides no support in the actual terms of the Letter of Credit. Chemical Bank relies on the application submitted by Torco for the Letter of Credit . . . . The Torco application was not even signed by [Matex] and has no bearing on [Matex]'s right to payment under the Letter of Credit.

Matex Opp/Reply at 4 (citing *Bossier Bank & Trust Co. v. Union Planters Nat'l Bank of Memphis*, 550 F.2d 1077, 1081 (6th Cir. 1977) ("The letter of credit constitutes an independent contract between the issuer [Chem] and the beneficiary[ Matex].")). *See also* Matex Opp/Reply at 7-9 (citing *Werner Lahara Int'l, Inc. v. Harris Trust & Savings Bank*, 484 F. Supp. 65, 72 (W.D. Mich. 1980)

and MICH. COMP. LAWS § 440.5103(4) and UCP Article 4(a)).

Chem asserts a third reason why it was entitled to dishonor Matex's Draw:   on July 7, 2008 – the same date when Matex presented its initial Draw Request of $28,229– Matex advised Bank in writing that it had terminated the underlying Torco contract.  *See* Chem's MSJ at 6 n.9, citing Ex E). On July 17, 2008, Chem's counsel sent an e-mail asking Matex to provide a copy of that contract "as Matex's Second Draw request was based on the acceleration of the remaining terms [sic] of the Agreement, and at the same time, reminded Matex it had terminated the agreement." Chem's MSJ at 6 (citing Ex F).  Matex did not respond to this request or send Chem a copy of the underlying Torco contract.  Instead, Matex presented a Second Draw Request (again to Tim Walling in Chem's Marshall office) on July 28, 2008, seeking payment for Torco invoices from April 11 - July 18, 2008. *See* Chem's MSJ at 6 with n. 11 (citing Ex G).  Finally, Matex sent its Final Draw Request, for the LOC limit of $200,000, on September 12, 2008; it sent the request by Federal Express, by facsimile, and by e-mail, but again only to Tim Walling in Chem's Marshall office.  *See* Chem's MSJ at 6-7 with nn. 12-13 (citing Ex H and Walling Aff).  It is undisputed that Matex never presented the Final $200,000 Draw or the original LOC to Chem's Benton Harbor office.

Chem asserts a fourth reason why it was entitled to dishonor Matex's $200,000 Final Draw Request: Matex was attempting to have Chem pay an invoice which was not unpaid, namely Invoice No. LEO 807-701.  *See* Chem's MSJ at 7.  It is undisputed that Matex's alleged right to Torco's payment of the $200,000+ in rent depended on Matex's acceleration of the rents due for the remainder of the Torco contract's three-year term.  Chem contends that once Matex terminated its

contract with Torco, Matex was not legally entitled to accelerated payment of those future rents. Accordingly, Chem reasons, because Matex had no right to require Torco to pay accelerated future rents, the invoice it issued to Torco was not an "unpaid" invoice. *See* Chem Reply at 3("Because Invoice LEO 807-701 was not due and owing at the time of the alleged presentment, Chemical Bank was not bound even under the terms of the Letter of Credit to pay an invoice that is not due." Chem Reply at 3. *Cf. Osten Meat Co. v. Fist of America Bank - S.E. Michigan, N.A.*, 517 N.W.2d 742, 748 (Mich. App. 1994) (P.J. Sawyer, J. Corrigan, 30th Cir. J. Thomas Leo Brown) (holding that bank was entitled to dishonor beneficiary's draft on LOC, because beneficiary had submitted invoice marked "paid" and the LOC's terms allowed a draft to be made only for payment of unpaid invoices), *leave to app. denied*, No. 100700, 534 N.W.2d 525 (Mich. May 30, 1995) (table).

In response to Chem's terminated-contract and LOC-only-for-the-life-of-the-contract arguments, Matex takes refuge in the principle that an LOC is separate and independent from any related contracts – such as the Torco-Matex contract which required Torco to obtain the LOC in Matex's favor. Matex emphasizes that the "very purpose [of an LOC] is to assure payment without re[ference] to disputes regarding the underlying contract." Matex Opp/Reply at 4.

Matex filed a motion for summary judgment in March 2009, and Chem cross-moved for summary judgment in April 2009. In May 2009, Matex filed a joint opposition/reply brief. Chem filed a reply brief in support of its motion, but not a brief directly in opposition to Matex's motion.

Matex moved for leave to file a sur-reply brief on the ground that Chem's reply brief "raises new issues that were never addressed in its previously-filed brief. Specifically, Chemical Bank, for the first time, accused Matex of 'asking Chemical Bank to commit fraud.' This is a serious

accusation that is unsupported by the law or facts and Matex should be allowed to respond."

Matex's Mot. for Leave to File Sur-Reply at 2. Matex charged that

> [i]n raising this new issue, Chemical Bank is trying to find an excuse, no matter how far-fetched, for missing the notification deadlines for dishonor that are set forth in the Michigan Compiled Laws and the Uniform Customs and Practice for Documentary Credits ('UCP'). Fraud is one basis for dishonor that is not subject to those deadlines.
>
> As detailed in Matex's previously-filed briefs, Michigan law and the UCP require Chemical Bank to notify Matex of any discrepancies in the presentation of the July 28, 2008 Draw (the "Draw") within certain timeframes. The law clearly dictates that Chemical Bank's failure to timely notify Matex of any discrepancies precludes Chemical Bank from later claiming discrepancies in the presentation of the Draw. Accordingly, all of Chemical Bank's previous arguments fail because it is uncontested that Chemical Bank did not notify Matex of any discrepancies by the legally imposed deadlines. * * *

Matex's Brief in Support of Mot. for Leave to File Sur-Reply at 1 (paragraph break added). [3]

---

[3]

Like Matex's motion for leave to file a sur-reply, Chem's motion for leave to file a sur-reply fails to describe its efforts to obtain concurrence from opposing counsel before filing the motion. Chem's motion is subject to dismissal *without* prejudice because of this failure to comply with Western District of Michigan Local Civil Rule 7.1(d), which provides,

> With respect to all motions, the moving party shall ascertain whether the motion shall be opposed. * * * All motions shall affirmative state the efforts of the moving party to comply with the obligation imposed by this rule.

"'The importance of the communication required by this rule . . . cannot be overstated.'" *ECM Converting Co. v. Corrugated Supplies Co., LLC*, 2009 WL 385549, *2 (W.D. Mich. Feb. 13, 2009) (Maloney, C.J.) (quoting *Woodhull v. Kent Cty.*, 2006 WL 708662, *1 (W.D. Mich. Mar. 21, 2006) (Miles, J.)). "The remedy for failure to seek concurrence under the Local Rule 7.1(d) is denial of the motion without prejudice." *Yetman v. CSX Transp., Inc.*, 2009 WL 35351, *1 (W.D. Mich. Jan. 6, 2009); *see also Kim v. USDOL*, 2007 WL 4284893, *1 (W.D. Mich. Dec. 4, 2007) (Brenneman, M.J.) ("[T]he court properly denied plaintiff's motion for judgment on the pleadings because he failed to seek concurrence under the local court rule . . . ."); *Deuel v. Law Offices of Timothy E. Baxter & Assocs., P.C.*, 2008 WL 482850, *1 (W.D. Mich. Feb. 18, 2008) (Brenneman, M.J.).

Denial of Chem's motion (for leave to file a sur-reply) for failure to comply with the consultation rule, however, would be without prejudice. The court instead will deny Chem's motion

This court agreed that Chem should not be permitted to raise new arguments, issues or defenses for the first time in a reply brief. The court denied Matex leave to file to a sur-reply, however, writing as follows:

> As Matex correctly notes, Chem could and should have raised the fraud argument in its brief supporting its own summary-judgment motion, or in a brief opposing Matex's summary-judgment motion [which Chem did not file]. The most logical course of action, however, is not to complicate and prolong this dispute, and consume more judicial resources, by allowing Matex to respond to an argument that is not properly before the court in the first place.
>
> The court sees no reason to depart from the well-settled rule that "this court will not consider arguments that are raised for the first time in a reply brief." *Appalachian Railcar Servs., Inc. v. Boatright Enters., Inc.*, 602 F. Supp.2d 829, – n.24 . . . (W.D. Mich. 2008) (Maloney, J.) (citing, *inter alia*, *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) ("We have found issues to be waived when they are raised for the first time in . . . replies to responses.")); *accord Am. Traffic Solutions, Inc. v. Redflex Traffic Sys., Inc.*, 2009 WL 775104, *1 (D. Ariz. Mar. 20, 2009) ("The remedy for dealing with new evidence first appearing in a reply is that we will not consider issues or evidence raised for the first time in [a] reply.") . . . .
>
> This rule is logical, just, and efficient. For one thing, raising a new argument, defense, or evidence in a reply brief affords the other side no opportunity to respond. * * * *NLRB v. Int'l Health Care, Inc.*, 898 F.2d 501, 506 n.5 (6th Cir. 1990) . . . . As this court has explained,
>
>> The opposing party should not have to incur the cost and effort of additional filings – a motion for leave to file a sur-reply, and the sur-reply itself – because the movants deliberately, or more likely inadvertently, held back part of their case. Nor should the court have to schedule oral argument when it would not have otherwise done so, merely to afford the opposing party a fuller opportunity to address the belated argument.
>
> *Gutierrez v. 78th Judicial District Court*, 2009 WL 1507415, *1 n.2 (W.D. Mich. May 29, 2009) (Maloney, C.J.). Barring extraordinary circumstances, both the opposing party and the court are entitled to rely on the movant's opening brief as a conclusive statement of its position on the claims targeted by the motion. Both efficiency, and fairness to one's adversary, militate in favor of requiring a movant's

---

*with* prejudice.

opening brief to identify with certainty *all* the arguments and evidence which the movant believes supports his position.

"When a movant submits additional evidence [or arguments] in support of summary judgment after the filing of the non-movant's response, district courts have the option of either disregarding that additional evidence or providing the non-movant with the opportunity to file a surreply." *Magoffe v. JLG Indus., Inc.*, 2008 WL 2883183, *2 (D.N.M. May 7, 2008) [citation omitted]. * * *

**Accordingly, to the extent that Chem has asserted any new fraud argument, theory, or evidence in its reply brief, this court will disregard it.** This protects Matex's reasonable expectations about motions practice at least as much as allowing a sur-reply. And, unlike allowing a sur-reply, this course of action safeguards the party which apparently has been diligent in its briefing (Matex), without expending judicial resources on an issue that its adversary (Chem) waived through inaction or oversight. *See Martori v. Golden Rule Ins. Co.*, 2009 WL 1357389, *2 and *5 (D. Ariz. May 14, 2009) ("* * * [B]ecause the court has reached its conclusion without considering the materials supplied by plaintiffs with their reply memo . . . , GRIC's request to strike a portion of the reply and to file a sur-reply is moot."); *Ekweani v. Maricopa Cty. Sheriff's Office*, 2009 WL 976520, *1 (D. Ariz. Apr. 9, 2009) ("[W]e deny plaintiffs' motion for leave to file a sur-reply. * * * We . . . will not consider any issues or evidence identified for the first time in defendants' reply brief."); *In-N-Out Burgers, Inc. v. In & Out Tire & Auto, Inc.*, 2008 WL 3413324, *4 (D. Nev. Aug. 8, 2008) ("* * * [T]he court has not considered the challenged evidence in ruling on the motion for judgment on the pleadings. * * * Leave to File a Sur-reply . . . is denied.") . . . .

*International-Matex Tank Terminals - Illinois v. Chemical Bank*, 2009 WL _____ (W.D. Mich. _____, 2009) (Maloney, C.J.) ("*Matex 1*") (other citations omitted).

**Similar reasoning applies with respect to defendant Chem's motion for leave to file a sur-reply brief.** Rather than prolong and complicate this matter by adding another brief on an argument that is not properly before the court, the better course is to disregard such arguments.

Chem argues that it needs a sur-reply brief for two reasons. First, it wishes to counter Matex's argument that because Chem never filed a separate brief in opposition to Matex's motion

for summary judgment, it effectively conceded all of Matex's factual allegations.  *See* Matex's

Opp/Reply[4] at 1; Chem's Motion for Leave to File a Sur-Reply Brief at 1-2 and Chem's Proposed

Sur-Reply Brief at 1-2.  Chem does not need a sur-reply for this purpose, because the court finds that

its decision not to file an opposition brief, while perhaps unwise, has not effected the blanket

concession of Matex's factual allegations.  As Chem notes, it filed affidavits with its own summary-

judgment motion.  The court will consider those affidavits as contesting the corresponding factual

allegations made in Matex's complaint and opening summary-judgment brief.

> Second, Chem explains it raised the issue of fraud
>
> in direct defense to the Motion for Summary Judgment.  LOC 207-19 specifically states that "that if General Sales and Service, Inc. DBA Torco Racing Fuels does not have a bond issued to serve as collateral for the aforementioned contract, TOR-L1[, then] General Sales and Service, Inc. DBA Torco Racing Fuels agrees to have a *Letter of Credit available for the life of the said contract*."  (emphasis added).  Matex terminated TOR-L1 on July 7, 2008.  As of July 7, 2008, [therefore,] LOC 2007-19 was no longer available to Matex.

Chem's Motion for Leave to File a Sur-Reply Brief at 2 (emphasis in original); *see also* Chem's

Proposed Sur-Reply Brief at 2-3 ("Although Matex argues that the status of TOR-L1 [the Matex-

Torco contract] is immaterial to this dispute, it ignores the clear language in LOC 2007-19. [U]nder

paragraph 3 of Special Instructions . . . Torco . . . 'does not have a bond issued to serve as collateral

for the aforementioned contract . . . . [Torco] agrees to have a letter of credit available for the life of

said contract.").  A sur-reply brief is inappropriate for this purpose, because Chem could and should

have fully developed and supported the terminated-contract defense in its opening summary-

judgment brief or at least in its reply brief.  The court will evaluate Chem's terminated-contract and

---

[4]As is common when parties file cross-motions for summary judgment, Matex filed one brief to serve both as opposition to Chem's motion and as a reply in support of its own motion.

LOC-only-for-life-of-the-contract defenses based on the arguments and authorities presented in Chem's opening summary-judgment brief and its reply brief supporting its motion (it did not file a brief denominated as a brief in opposition to Matex's motion for summary judgment).

**ORDER**

Defendant Chemical Bank's motion for leave to file a sur-reply [doc. #49] is **DENIED**.

Arguments, evidence, theories, or defenses raised by either party for the first time in a reply brief[5] **SHALL NOT** be considered in ruling on the pending summary-judgment motions.[6]

This is <u>not</u> a final and immediately appealable order.

**IT IS SO ORDERED this 4TH day of August 2009.**

    /s/   Paul L. Maloney
Paul L. Maloney
Chief United States District Judge

---

[5] Matex's combined opposition/reply brief is doc. #45, while Chem's reply brief is doc. #46.

[6] *See Susko v. Cox Enters., Inc.*, 2008 WL 4279671, *1 (N.D. W.Va. Sept. 16, 2008) ("If a court does not rely upon the new material raised in the opposing party's reply brief to reach its decision in a matter, then a surreply is superfluous and unnecessary.") (citing *EEOC v. LA Weight Loss*, 509 F. Supp.2d 527, 540 (D. Md. 2007) (no leave to file sur-replies because the court did not rely on the new evidence and cases in the replies in making its decision) and *First Penn-Pacific Life Ins. Co. v. Evans*, 162 F. Supp.2d 423, 430 (D. Md. 2001) (no leave to file a sur-reply "[s]ince the Court will not be considering the additional contentions advanced" in defendant's reply brief)).