---

**INTERNATIONAL-MATEX TANK TERMINALS-**
ILLINOIS, a Delaware general partnership,

     Plaintiff,

     **v.**

**CHEMICAL BANK**, a Michigan state-chartered bank,

     Defendant.

Case No. 1:08-cv-1200

Honorable Paul L. Maloney

---

### Opinion and Order
("*Matex 4*")

**Granting Plaintiff International Matex's Motion for Summary Judgment;
Denying Defendant Chemical Bank's Motion for Summary Judgment;
Directing the Parties to Jointly Quantify the Defendant's Liability**

Plaintiff International-Matex Tank Terminals-Illinois ("Matex") operates petroleum and chemical storage facilities in Lemont and Joliet, Illinois. *See* Matex's MSJ, Exhibit ("Ex") A - Affidavit of Matex Sales Manager Mark Engdall dated May 4, 2009 ("Engdall Aff 2") ¶¶ 3-4. In December 2006, Matex executed a written contract wherein it leased a fuel storage tank to non-party General Sales and Service, Inc., d/b/a Torco Racing Fuels ("Torco" and "the Torco contract") for three years, in return for monthly payments from Torco. The contract required Torco to obtain a letter of credit ("LOC") to serve as security for those monthly rental payments. On September 13, 2007, Torco obtained an LOC from defendant Chemical Bank ("Chem") in favor of Matex, with a limit of $200,000 in aggregate "drawing" rights for Matex.

Torco missed numerous monthly rental payments, and by June 2008 it owed Matex more than $28,000. *See* Engdall Aff ¶ 11. Matex sent a Default Letter to Torco on June 19, 2008 demanding payment within fifteen days. When Torco failed to pay, Matex sent a letter on July 18, 2008 stating that it was accelerating liability for the monthly payments that would have come due during the rest of the 3-year contract, for a total of about $274,000. *See* Engdall Aff ¶¶ 11-14 and its Exs. 2 and 3. The lack of payments from Torco caused Matex to present a "draw" on the LOC, in the maximum amount of $200,000, on July 28, 2008. *See* Engdall Aff ¶ 15& its Ex. 4 (the Draw).

Chem refused to honor, and continues to refuse to honor, the Draw.

Matex filed a motion for summary judgment in March 2009, and Chem cross-moved for summary judgment in April 2009. In May 2009, Matex filed a joint opposition/reply brief. Chem filed a reply brief in support of its motion, but not a brief directly in opposition to Matex's motion. For the reasons that follow, the court will grant summary judgment to plaintiff Matex.

**Matex contends that its presentation of the Draw was proper, triggering Chem's contractual obligation under the LOC to pay $200,000 to Matex. Matex also contends that even if its presentation of the Draw were technically or procedurally improper, Chem has waived its right to dishonor the Draw on that basis.** Specifically, Matex alleges that Chem failed to notify it, within the time required by the law, of any deficiency in its presentation of the Draw. Accordingly, Matex asserts Michigan common-law claims for Breach of Contract (count one) and Wrongful Dishonor of an Instrument (count two).

The LOC provides, in pertinent part,

[Chem] hereby establish[es] [its] irrevocable standby letter of credit No. 2007-19 in [Matex's] favor effective September 13, 2007 for the account to [Torco] up to an aggregate amount of US $200,000.00 (Two Hundred Thousand and 00/100 U.S. Dollars) available at sight upon [Matex's] demand for payment with [Chem] against

[sic] presentation of the following documents:

1. A) i.      Copy(ies) of Original, or telecopies of invoice(s) issued by Matex-Lemont requesting payment from [Torco] and

     ii.      Statement purportedly signed by an authorized representative of Matex-Lemont stating that the drawing amount represents funds due to Matex-Lemont under the accompanying invoice(s) which have not been paid by [Torco] under the leaded racing fuel agreement No. TOR-L1 and that the said invoice(s) remain(s) unpaid at the time of drawing.

Engdall Aff, Ex 1 (LOC).

**Matex contends that it complied with these LOC terms** by providing Chem with copies of its invoices to Torco and a signed statement by a Matex representative that the funds requested represented the amount which Torco owed but had not paid, and it notes that "Chemical Bank has never claimed that the documents provided by Matex in support of the Draw were in any way defective." Matex MSJ at 6 (citing Engdall Aff ¶ 18). Matex notes Chem Bank Vice-President Tim Walling's admission that "Chemical Bank did not notify IMTT of any discrepancy in the presentation of the Draw[.]" Matex Opp/Reply at 2 (quoting Walling Aff (Chem MSJ Ex 1) ¶ 13). On these bases, Matex seeks summary judgment on count one, breach of contract.

**Chem Bank responds that Matex did <u>not</u> follow the procedures which the LOC specified as prerequisites to a valid Draw.** Chem Bank points out that Matex repeatedly presented the Draw at a location other than that required by the LOC, and *never* presented the Draw at the location expressly required by the LOC. *See* Chem's MSJ at 5, citing Ex B (LOC) ("We hereby engage with you that documents drawn in compliance with the terms and conditions of this letter of credit will be duly honored by us *upon presentation at Chemical Bank, 823 Riverview Drive, Benton Harbor, MI 49022* before the close of business on September 13, 2008.") (emphasis added by Chem).

Namely, on July 7, 2008, Matex sent its first attempted Draw – by facsimile, by e-mail, and by Federal Express delivery – all to Tim Walling in Chem's Marshall, Michigan office. *See* Chem's MSJ at 6, citing Ex D (First Draw Request, dated July 7, 2008).

At about 4:17 p.m. on July 28, 2008, Matex sent its second attempted Draw, again to Tim Walling in Chem's Marshall, Michigan office. *See* Chem's MSJ at 6, citing Ex G (Second Draw Request, dated July 28, 2008). About half an hour later, at 4:54 p.m., Matex sent a "revised draw" to Chem's counsel, *see* Chem's MSJ at 6 (no citation to the record), who apparently also was not located in Chem's Benton Harbor, Michigan office. About ten minutes later, at 5:03 p.m., Matex sent a "correct demand notice" to Chem's counsel, who apparently still was not located in Chem's Benton Harbor, Michigan office, and this notice was addressed to Walling in Chem's Marshall, Michigan office. *See* Chem's MSJ at 6 (no citation to the record).

Finally, on September 12, 2008, Matex sent its last Draw request only to Walling in Chem's Marshall, Michigan office. *See* Chem's MSJ at 6-7, citing Ex H (Third Draw Request, dated September 12, 2008).

**Matex does not dispute that it never delivered or sent any of its attempted Draw requests to the address specified in the LOC.** Nor does Matex deny the applicability and plain meaning of MICH. COMP. LAWS § 440.5108(1), which provides,

Except as otherwise provided in section 5109[1], an issuer shall honor a presentation

---

[1]

MICH. COMP. LAWS § 440.5109 provides as follows:

(1)     If a presentation is made that appears on its face to strictly comply with the terms and conditions of the letter of credit, but a required document is forged or materially fraudulent, or honor of the presentation would facilitate a material fraud by the beneficiary on the issuer or applicant:

that, as determined by the standard practice referred to in subsection (5)[2], appears on

------

(a)  The issuer shall honor the presentation, if honor is demanded by one or more of the following:

(i)  A nominated person who has given value in good faith and without notice of material fraud.

(ii)  A confirmer who has honored its confirmation in good faith.

(iii)  A holder in due course of a draft drawn under the letter of good credit which was taken by acceptance by the issuer or nominated person.

(iv)  An assignee of the issuer's or nominated person's deferred obligation that was taken for value and without notice of forgery or material fraud after the obligation was incurred by the issuer or nominated person.

(b)  The issuer, acting in good faith, may honor or dishonor the presentation in any other cause.

(2)  If an applicant claims that a required document is forged or materially fraudulent or that honor of the presentation would facilitate a material fraud by the beneficiary on the issuer or applicant, a court of competent jurisdiction may temporarily or permanently enjoin the issuer from honoring presentation or grant similar relief against the issuer or other persons only if the court finds all of the following:  * * *

Matex's opening brief in support of its motion for summary judgment does not mention MICH. COMP. LAWS § 440.5109.  Likewise, Chem's opening brief in support of *its* motion for summary judgment does not mention MICH. COMP. LAWS § 440.5109.

Accordingly, neither party is entitled to rely on MICH. COMP. LAWS § 440.5109 in seeking summary judgment. *See Irwin Seating Co. v. IBM Corp.*, 2007 WL 518866, *2 n.2 (W.D. Mich. Feb. 15, 2007) (Robert Holmes Bell, C.J.) ("the Sixth Circuit repeatedly has recognized that arguments raised for the first time in a party's reply brief are waived.") (citing, *inter alia*, *Lexicon, Inc. v. Safeco Ins. Co. of America, Inc.*, 436 F.3d 662, 676 (6th Cir. 2006)).

[2]

MICH. COMP. LAWS § 440.5108(5) provides, "An issuer shall observe standard practice of financial institutions that regularly issue letters of credit.  Determination of the issuer's observation

its face to comply with the terms and conditions of the letter of credit. *Except as otherwise provided in section 5113 [MICH. COMP. LAWS § 440.5113] and unless otherwise agreed with the applicant, an issuer shall dishonor a presentation that does not appear to comply.*

Emphasis added. This court finds that Matex failed to comply with the LOC's location-of-presentation term.

**Matex alleges that the reason why it did not comply with the LOC's location-of-presentation term is that Chem "affirmatively requested that IMTT [Matex] send draws to Chemical Bank's Marshall, Michigan location."** Matex's Opp/Reply at 3-4 (citing Ex A, Engdall Aff ¶ 6).[3] Specifically, Matex alleges that a Chem employee named "Ms. Velvet" directed Matex employee Mark Engdall to send draw requests to Tim Walling in the Marshall office. Matex explains that

> [t]his was not unusual as Chemical Bank had previously honored draws on another letter of credit at the Marshall, Michigan location. * * * As a result of this specific instruction and past practice, Chemical Bank cannot now claim that [Matex] sent the Draw to the wrong location. Chemical Bank's "bait and switch" routine mocks the fundamental principle of good faith and fair dealing that is implied in every contract.

Matex Opp/Reply at 4, citing Ex A (Engdall Aff) ¶¶ 6-7 (other citations omitted). *See also* Matex Opp/Reply at 5-6. Chem responds that the employee in question, Velvet Smith, was never an assistant to Mr. Walling, never worked in Chem's commercial department, never spoke with Matex's Mark Engdall, and lacked actual or apparent authority to direct LOC beneficiaries to present draws

---

of the standard practice is a matter of interpretation for the court. The court shall offer the parties a reasonable opportunity to present evidence of the standard practice."

[3] For purposes of Matex's motion for summary judgment, the court must assume that Chem made such a request. For purposes of Chem's motion for summary judgment, the court must assume that Chem did *not* make such a request, if Chem denies making it. In any event, whether or not Chem actually made such a request is immaterial to the disposition of these motions.

to any particular office. *See* Chem's Reply at 2, citing Ex A (Affidavit of Timothy Walling dated May 8, 2009); Affidavit of Velvet Smith dated May 27, 2009 ("Smith Aff") ¶¶ 2-7.

Chem also denies that its standard practice with other LOCs was to accept draws at the Marshall office. *See* Chem Reply at 2. Matex has submitted a record of a July 2007 wire transfer from Chem Bank as proof that Chem honored a draw on a different (2006) Torco-related LOC even though it was presented to an office other than that purportedly required by that LOC's terms. Chem counters with Walling's testimony that the wire transfer in question, for about $3,400, "was not based upon the draw request, but [was] drawn directly from the line of credit of . . . Torco's parent company." Chem Reply at 3, citing Ex A (Affidavit of Timothy Walling dated May 8, 2009) ¶ 9.

Ultimately, Matex asserts that by invoking its right to dishonor draws which were admittedly not sent to the address required by the LOC, Chem is somehow violating the duty of "good faith and fair dealing that is implied in every contract." *Id.* at 4 (citation omitted). This argument lacks merit.

It is true that "Michigan common law recognizes an implied 'covenant of good faith and fair dealing' in every contract . . . ." *Little Caesar Enters., Inc. v. Rooyakker*, 2009 WL 1940563, \*6 (Mich. App. July 7, 2009) (p.c.) (P.J. Zahra, Whitbeck, M.J. Kelly) (citing *Hammond v. United of Oakland, Inc.*, 483 N.W.2d 652, 655 (Mich. App. 1992)). But Matex cannot use the duty of good faith and fair dealing as an end run around the unambiguous language of the contract. *See Kuzin v. A&J Precision Tool Co., Inc.*, 2001 WL 694089, \*6 (Mich. App. Mar. 30, 2001) (p.c.) (P.J. Whitbeck, Murphy, Cooper) ("'Under Michigan law, this implied covenant does not override the express terms of the parties' contract, and cannot form the basis for a claim independent of that contract.'") (quoting *Clark Bros. Sales Co. v. Dana Corp.*, 77 F. Supp.2d 837, 852 (E.D. Mich. 1999) (Rosen, J.)) (citing, *inter alia, Gen. Aviation, Inc. v. Cessna Aircraft Co.*, 915 F.2d 1038, 1041 (6th

Cir. 1990) and *Cook v. Little Caesar Enters., Inc.*, 972 F. Supp.2d 400, 409 (E.D. Mich. 1997) (Gadola, J.)).

A fuller quotation of the Michigan courts' statement of the principle makes this clear: "Michigan common law recognizes an implied 'covenant of good faith and fair dealing' in every contract '*that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract*.'" *Little Caesar*, 2009 WL 1940563 at *6, and *In re Estate of Denonville*, 2009 WL 2635150, *2 (Mich. App. Aug. 27, 2009) (p.c.) (P.J. Wilder, Jansen, Owens) (both quoting *Hammond*, 483 N.W.2d at 655) (emphasis added). A putative right to present to present draw requests somewhere other than Benton Harbor could not be part of "the fruits of the contract", as such presentation flatly contradicted the terms of the LOC.

If Matex wanted a legally enforceable right to present draw requests at the Marshall office, it could and should have negotiated the inclusion of such a term in the LOC. *Cf., e.g., First Apostolic Lutheran Church v. Bekkala*, 2005 WL 2086137, *2 (Mich. App. Aug. 30, 2005) (p.c.) (P.J. Saad, Hoekstra, Markey) (rejecting Church's argument that court should read into the contract the proviso that a certain option be deemed to expire within a "reasonable time", stating, "if the Church here desired to limit the applicability of the option to a particular time period, it should have negotiated such a limitation into the deed.") (citing *Toledo v. AAR Co.*, 21 N.W. 888, 890-91 (Mich. 1885) ("[t]he defendant's agreement was to pay on or before six months after the first cars ran over the road from Ann Arbor to Toledo, and he could not be compelled to pay before that event should happen. If he had wished to limit the time beyond which his liability would not extend, he should have incorporated it into the contract.") (citing *Stange v. Wilson*, 17 Mich. 342, 1868 WL 3303 (Mich. Oct. 14, 1868))), *app. denied*, 711 N.W.2d 314 (Mich. 2006).

Moreover, even if this court agreed that Chem had engaged in a "bait and switch" by orally asking Matex to present draws at the Marshall office, Michigan law would not authorize this court to "punish" or chastise Chem by excusing Matex's noncompliance with the LOC's written location-of-presentation requirement. Michigan courts do not and cannot refuse to enforce contractual provisions merely because the court feels that the result of enforcement is "too harsh" or "unfair." *See, e.g., Chrysler Corp. v. DiClemente Siegel Engineering, Inc.*, 1996 WL 33347850, *3 (Mich. App. 1996) (p.c.) (P.J. O'Connell, Smolenski, Cir. J. T.G. Power):

> Defendant argues that, regardless of whether the termination language was part of the contract, the general black letter rule that an implied duty of good faith and fair dealing cannot override express contractual terms should not be applied to the instant case due to the disparity in bargaining power between plaintiff and defendant. * * * [But] we do not find [Fourth Circuit decision cited by defendant] to be persuasive because Michigan law provides that a lack of good faith cannot override an express provision in a contract. *Eastway & Blevins Agency v. Citizens Ins. Co. of America*, 520 N.W.2d 640 (Mich. App. 1994); . . . . *No evidence suggests that plaintiff and defendant entered into the blanket purchase order agreement other than voluntarily, with full knowledge of the applicable terms. Therefore, the* termination *language of the contract cannot be overridden by any lack of good faith.*

*Id.* at *3 (emphasis added).

Finally, the court notes that Matex never explicitly argues that the LOC was legally modified by Chem's alleged request that it present draw requests at the Marshall office. To the extent that Matex intended to make such an argument, the court rejects it as inadequately developed and inadequately supported by citation to Michigan precedent, and as meritless. Section 11 of the LOC clearly states, "This Agreement may not be changed or modified without the written consent of the party sought to be bound by such change or modification." Chem's MSJ, Ex A at unnumbered page 13. The Michigan courts routinely enforce such contractual provisions, and Matex identifies no precedent suggesting that they would not enforce it here. As this court recently stated in a case

applying Michigan common law,

> Vandenburg has not explicitly contended that RMC's oral request for the return of certain materials somehow effected a modification of his contractual obligation to return *all* materials. Indeed, Vandenburg would be hard-pressed to make such an argument in the face of section 14-F, Enforcement-Entire Agreement, which contains an integration clause stating,
>
> > This agreement contains all the understandings and agreements between the parties concerning Employee's employment. Employee acknowledges that no person who is either an agent or employee of RMC may orally or by conduct modify, delete, vary, or contradict the terms and conditions set forth herein.
>
> *See Bero Motors, Inc. v. GMC*, 480 Mich. 1053, 743 N.W.2d 886, 887 (Mich. 2008) (J. Corrigan, dissenting from denial of leave to appeal, joined by J. Markman) ("in *Quality Products & Concepts Co. v. Nagel Precision, Inc.* . . , 469 Mich. 362, 666 N.W.2d 251 (2003), this Court held that a party who seeks to prove that a written agreement prohibiting oral modifications was [nonetheless] orally modified must prove by clear and convincing evidence 'that the parties mutually intended to modify the particular original contract, including its restrictive amendment clauses such as written modification . . . clauses.'").

*Rochester Midland Corp. v. Enerco Corp.*, 2009 WL 1561817, *6 (W.D. Mich. June 1, 2009)

(Maloney, C.J.). *Accord Spero Elec. Corp. v. IBEW*, 439 F.3d 324329 (6th Cir. 2006) (under federal

common law, "'we need not decide whether oral modification in general is impermissible because

all CBAs here contained an express zipper clause prohibiting modification except by written

agreement executed by both parties. *Such zipper clauses are legally effective*. Because neither an

oral agreement, nor an unsigned letter that by its own terms only covers the initial CBA, constitutes

a valid modification of the final CBA at issue here, [the final CBA]'s unambiguous language

controls.'") (quoting *Pleasantview Nursing Home, Inc. v. NLRB*, 351 F.3d 747, 750 754 (6th Cir.

2003) (Boggs, C.J.) (internal citation and footnotes omitted)).

**The court determines that Matex's non-compliance with the LOC's location-of-presentation provision triggered Chem's presumptive right under MICH. COMP. LAWS §**

**440.5108(1) to dishonor all the non-complying Draw requests.**

As will be seen below, however, Chem subsequently waived that right by failing to comply with both MICH. COMP. LAWS § 440.5108(2), which required it to give certain notice within seven business days of a non-complying draw request, and UCP Article 16(d), which required it to give certain notice within "five banking days" of a non-complying draw request.

As to Count II, Wrongful Dishonor, Matex contends that under Michigan law, Chem was required to take certain actions within seven business days after Matex presented the Draw:

> An issuer has a reasonable time after presentation, but not beyond the end of the seventh business day of the issuer after the day of its receipt of documents to do 1 or more of the following:
>
> (a)      To honor.
>
> (b)      If the letter of credit provides for honor to be completed more than 7 business days after presentation, to accept a draft or incur a deferred obligation.
>
> (c)      To give notice to the presenter of discrepancies in the presentation.

MICH. COMP. LAWS § 440.5108(2).  Matex states that the LOC did <u>not</u> provide for Chem to honor the Draw more than 7 business days after it was presented, *see* Matex MSJ at 1 n.1, and Chem does not contradict this statement.  Accordingly, the court determines that MICH. COMP. LAWS § 440.5108(2)(b) does not apply.

Rather, Matex contends that no later than August 6, 2008 – seven business days after Chem received Matex's Draw on July 28, 2008 – Chem was statutorily obligated to either honor the Draw (the option permitted by MICH. COMP. LAWS § 440.5108(2)(a)) or notify Matex of any discrepancy in its presentation (the option permitted by MICH. COMP. LAWS § 440.5108(2)(c)).

In further support of count II, Wrongful Dishonor, Matex invokes the International Chamber

of Commerce's Uniform Custom and Practice for Documentary Credits ("UCP")[4] Article 14(b),

which provides that "the issuing bank shall . . . have a maximum of five banking days following the

day of presentation to determine if a presentation is complying."  Matex contends that once Chem

decided not to honor the Draw due to noncompliant presentation, UCP Article 16(c)  required it to

provide Matex with a *single* notice – not *more than one* notice – which stated

> i. that the bank is refusing to honor or negotiate; and
>
> ii. each discrepancy in respect of which the bank refuses to honor or negotiate; and
>
> iii. a) that the bank is holding the documents pending further instructions from the presenter; or
>
>   b) that the issuing bank is holding the documents until it receives a waiver from the applicant and agrees to accept it, or receives further instructions from the presenter prior to agreeing to accept a waiver;
>
>   c) that the bank is returning the documents;
>
>   d) that the bank is acting in accordance with instructions previously received from the presenter.

In turn, UCP Article 16(d) requires the bank to provide such notice "no later than the close of the

fifth banking day following the presentation."

  Ultimately, Matex contends that Chem's failure to comply with the notice provisions of state

statute and the UCP preclude it from dishonoring the Draw for any reason which it did not specify

---

[4]

  The LOC provides that it is governed by UCP Publication Number 500.  That publication was superseded by UCP Publication Number 600, which Matex cites in its briefs.

  Matex states that "[a]ny changes between UCP publications do not materially impact [Matex]'s claims."  Matex's Opp/Reply at 3 n.2 (citing Ex C and Ex D).  Chem has not contradicted this statement, and the court's review of Publications 500 and 600 confirms that the pertinent provisions (Articles 14(b) and 16(b), (d) and (f)) are identical from one version to the next.

by proper notice.  Matex relies on MICH. COMP. LAWS § 440.5108(3), which provides,

> Except as otherwise provided in subsection (4),[5] *an issuer is precluded from asserting as a basis for dishonor any discrepancy if timely notice is not given*, or any discrepancy not stated in the notice if timely notice is given.

Emphasis added.  The commentary to this statutory section states that a bank's "failure to act within the time permitted . . . constitutes dishonor", and it warns that

> [b]ecause of the preclusion in subsection [3] [MICH. COMP. LAWS § 440.5108(3)] and the liability an issuer may incur . . . for wrongful dishonor, the effect of such silent dishonor may ultimately be the same as though the issuer had honored, i.e., it may owe damages in the amount drawn but unpaid under the letter of credit.

MICH. COMP. LAWS § 440.5108, comment 2.

As for the UCP, Matex relies on Article 16(f), which provides,

> If an issuing bank fails to act in accordance with the provisions of this article, it shall be precluded from claiming that the documents do not constitute a complying presentation.

**Chem's attempt to avoid the consequence of its non-compliance with these Michigan statute and UCP notice requirements is unavailing.**  Chem argues that because Matex did not comply with the LOC's location-of-presentation requirement, then Chem's duty to give notice of its

---

[5]

MICH. COMP. LAWS § 440.5108(4) provides,

> Failure to give notice specified in subsection (2) or to mention fraud, forgery, or expiration in the notice does not preclude the issuer from asserting[,] as a basis for dishonor[,] fraud or forgery as described in section 5109(1) or expiration of the letter of credit before presentation.

Thus, under MICH. COMP. LAWS § 440.5108(4), if Chem failed to timely send a proper notice which specified the alleged presentation defect, it will be precluded from dishonoring the Draw on the basis of that defect.  Conversely, Chem's failure to timely send a proper notice which specified fraud or forgery as the basis for dishonor, will *not* preclude it from dishonoring the Draw on the basis of fraud or forgery.  Chem did not assert a supposed fraud defense, however, until its reply brief, so it has waived that defense.

reason for refusing to honor the draws never arose. *See* Chem's MSJ at 9-13 and Chem's Reply at 1-2. This argument is untenable because Chem identifies no Michigan precedent supporting it, and because it would lead to an extreme and illogical result. Namely, if the issuer of an LOC were allowed to dishonor a draw without complying with its notice-of-discrepancy obligations – on the ground that there was a discrepancy in the first place (in this case, Matex's failure to present the draws to the address specified in the LOC) – the notice-of-discrepancy requirements in UCP Article 16 and MICH. COMP. LAWS § 440.5108 would be rendered nugatory.

Chem provides no reason to believe such an extreme result was intended by the Michigan Legislature, by the drafters of the UCP, or by these parties when they entered into the LOC. And it would contravene the venerable principle that courts must not construe statutory or contractual provisions so as to deprive such a provision of force and effect. *See Mantei v. Michigan Pub. Sch. Employees Ret. Sys.*, 663 N.W.2d 486, 491-92 (Mich. App. 2003) (Richard Allen Griffin, J.) ("When parsing a statute, this Court presumes that every word is used for a purpose. It is important to ensure that words in a statute are not ignored, treated as surplusage, or rendered nugatory.") (citing, respectively, *Pohutski v. Allen Park*, 465 N.W.2d 675, 683, 641 N.W.2d 219, 226 (Mich. 2002) (Maura Corrigan, C.J.) and *Robertson v. Daimler Chrysler Corp.*, 465 Mich. 732, 748, 641 N.W.2d 567, 576 (Mich. 2002) (Stephen Markman, J.)). *Accord Reg. Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 716 (6th Cir. 2007) (holding that the construction of a rule urged by the plaintiff "would render [certain] words surplusage, a result we are to avoid whenever possible") (citing, *inter alia*, *Ratzlaf v. US*, 510 U.S. 135, 140 (1994)); *Dematic Corp. v. UAW*, – F. Supp.2d –, –, 2009 WL 2143648, *10 (W.D. Mich. July 16, 2009) (Maloney, C.J.) ("Like a statute, a CBA must be construed so as to give force and effect to all its provisions, 'so as to render none nugatory.'") (quoting, *inter*

*alia*, *Tackett v. M&G Polymers USA, LLC*, 561 F.3d 478, 489 (6th Cir. 2009)).

**Finally, the court agrees with Matex that Chem's remaining defenses lack merit.** First, Matex correctly contends that the issue of whether it terminated the Matex-Torco contract is not material, because the status of that contract cannot affect Chem's obligation to honor the Draw. *See* MSJ at 9. Matex rightly relies on MICH. COMP. LAWS § 440.5108(4), which provides that "[r]ights and obligations of an issuer to a beneficiary" under an LOC "are independent of the existence, performance, or nonperformance of a contract or arrangement out of which the letter of credit arises or which underlies it . . . .", and on UCP Article 4(a), which provides that

> A credit by its nature is a separate transaction from the sale or other contract on which it may be based and banks are in no way concerned with or bound by such contract(s), even if any reference whatsoever to such contract(s) is included in the letter of credit.

*See* Matex's MSJ at 10-11.

Chem also contends, by way of defense, that it was entitled to dishonor Matex's Draw because it did not comply with the LOC in a second respect: Matex did not include the original LOC with the Draw, as required by paragraph 7 of its LOC application per Chem's regular business practice. *See* Chem's MSJ at 5-6, citing its Ex A (LOC Application) and Ex B (LOC) and Ex C (Affidavit of Rhonda Mauchmar) ¶ 8 and Ex D (Matex's first Draw Request, dated July 7, 2008); *see also* Chem Reply at 4 ("[Matex] never presented LOC 2007-019 despite being directed to do so by Mr. Walling [a vice-president in Chem's Marshall office]."). Matex responds that

> Chemical Bank's argument that [Matex] was required to provide the original Letter of Credit provides no support in the actual terms of the Letter of Credit. Chemical Bank relies on the application submitted by Torco for the Letter of Credit . . . . *The Torco application was not even signed by [Matex]* and has no bearing on [Matex]'s right to payment under the Letter of Credit.

Matex Opp/Reply at 4 (emphasis added); *see also* Matex Opp/Reply at 7-9 (citing, *inter alia*, *Werner*

*Lahara Int'l, Inc. v. Harris Trust & Savings Bank*, 484 F. Supp. 65, 72 (W.D. Mich. 1980) and UCP

Article 4(a)).  Moreover, the Michigan Legislature has broadly provided that

> [r]ights and obligations of an issuer to a beneficiary to a nominated person under a letter of credit are independent of the existence, performance, or nonperformance of a contract or arrangement out of which the letter of credit arises or which underlies it, including contracts or arrangements between the issuer and the applicant and between the applicant and the beneficiary.

MICH. COMP. LAWS § 440.5103(4).[6]  Matex properly states and applies this principle of law, and

Chem does nothing to persuasively undermine it.  *See Bossier Bank & Trust Co. v. Union Planters*

*Nat'l Bank of Memphis*, 550 F.2d 1077, 1081 (6th Cir. 1977) ("The letter of credit constitutes an

independent contract between the issuer [Chem] and the beneficiary[ Matex].").

Finally, Chem asserts that it was entitled to dishonor Matex's $200,000 Final Draw Request

---

[6]

This Michigan statutory subsection has apparently never been discussed by any court.  The terms "440.5103(4)" and "section 5103(4)" do not appear in any federal or state decision available on WestLaw.  The Michigan Court of Appeals cited section 440.5103 generally during a discussion emphasizing the independence of the LOC from any related or underlying contract.  *See City Nat'l Bank of Detroit v. Westland Apts.*, 393 N.W.2d 554 (Mich. App. 1986):

> There are three distinct contracts implicated in a letter of credit transaction.  The first is between the issuer and its customer.  The second is between the issuer and the beneficiary.  The third is between the customer and the beneficiary.  *The obligations created by these contracts are separate and distinct.*  As stated in the Official Uniform Commercial Code Comment to UCC 5-114:

>> 1.  The letter of credit is essentially a contract between the issuer and the beneficiary and is recognized by this Article as independent of the underlying contract between the customer and the beneficiary (see Section 5-109 and Comment thereto).  In view of this independent nature of the letter of credit engagement, the issuer is under a duty to honor the drafts or demands for payment which in fact comply with the terms of the credit without reference to their compliance with the terms of the underlying contract.  * * *

*Id.* at 557 (names of parties omitted).

-16-

because Matex was attempting to have Chem pay an invoice which was not "due and owing", namely Invoice No. LEO 807-701. *See* Chem's MSJ at 7. It is undisputed that Matex's alleged right to Torco's payment of the $200,000+ in rent depended on Matex's acceleration of the rents due for the remainder of the Torco contract's three-year term. Chem contends that once Matex terminated its contract with Torco, Matex was not legally entitled to accelerated payment of those future rents. Accordingly, Chem reasons, because Matex had no right to require Torco to pay accelerated future rents, the invoice it issued to Torco was not an "unpaid" invoice. *See* Chem Reply at 3("Because Invoice LEO 807-701 was not due and owing at the time of the alleged presentment, Chemical Bank was not bound even under the terms of the Letter of Credit to pay an invoice that is not due.")3. *Cf. Osten Meat Co. v. Fist of America Bank - S.E. Michigan, N.A.*, 517 N.W.2d 742, 748 (Mich. App. 1994) (P.J. Sawyer, J. Corrigan, 30th Cir. J. Thomas Leo Brown) (holding that bank was entitled to dishonor beneficiary's draft on LOC, because beneficiary had submitted an invoice marked "paid" and the LOC's terms allowed a draft to be made only for payment of unpaid invoices), *leave to app. denied*, No. 100700, 534 N.W.2d 525 (Mich. May 30, 1995) (table).

In response to Chem's terminated-contract and LOC-only-for-the-life-of-the-contract arguments, Matex again takes justifiable refuge in the principle that an LOC is separate and independent from any related contracts – such as the Torco-Matex contract which required Torco to obtain the LOC in Matex's favor. As Matex emphasizes, the "very purpose [of an LOC] is to assure payment without re[ference] to disputes regarding the underlying contract." Matex Opp/Reply at 4. If Torco wishes to contest its obligation to pay the accelerated rents – or Matex's right to simultaneously terminate the Torco contract *and* demand such accelerated rents – or to challenge the rent-acceleration clause itself as unenforceable for unconscionability, it is Torco's right and

opportunity to do so in separate litigation; it is not Chem's place to do so here. Chem's argument that Matex's invoice is not "due and owing" because it believes Torco has valid legal defenses to Matex's demand for payment of accelerated rent, cannot be resolved without "reference to" the underlying Matex-Torco contract. The principle that an LOC is independent from any underlying or related contracts is designed precisely to prevent LOC claimants and the courts from becoming embroiled in such ancillary disputes about contract formation, execution, enforceability, interpretation, etc. *See In re Auto Specialties Mfg. Co.*, 153 B.R. 510, 519-20 (W.D. Mich. Bankr. 1993) (Jo Ann Stevenson, Bankr. J.) ("The whole point of a credit transaction is to remove the vagaries of the underlying transaction from contention.").

Accordingly, even if Matex breached its contract with Torco or acted beyond its authority under that contract, that would be of no avail to Chem with regard to its duties and rights under the LOC.. As our Court of Appeals recently declared,

> Under the so-called 'independence principle,' a bank's duty to pay on letters of credit is independent of whether or not the applicant . . . and the beneficiary . . . have performed on the underlying contract. In other words, the bank 'must pay on a proper demand from the beneficiary *even though the beneficiary may have breached the underlying contract* with the applicant."

*Langley v. Prudential Mtg. Capital Co.*, 554 F.3d 647, 649 (6th Cir. 2009) (panel denial of rehearing) (quoting 3 JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE § 26-2 at 138 (5th ed. 2008)) (emphasis added).

### Note on Previous Denial of Motions for Leave to File Sur-Reply Briefs

Matex moved for leave to file a sur-reply brief on the ground that Chem's reply brief "raises new issues that were never addressed in its previously-filed brief. Specifically, Chemical Bank, for the first time, accused Matex of 'asking Chemical Bank to commit fraud.' This is a serious

accusation that is unsupported by the law or facts and Matex should be allowed to respond." Matex's Mot. for Leave to File Sur-Reply at 2. Matex charged that

> [i]n raising this new issue, Chemical Bank is trying to find an excuse, no matter how far-fetched, for missing the notification deadlines for dishonor that are set forth in the Michigan Compiled Laws and the . . . UCP . . . . Fraud is one basis for dishonor that is not subject to those deadlines.
>
> As detailed in Matex's previously-filed briefs, Michigan law and the UCP require Chemical Bank to notify Matex of any discrepancies in the presentation of the July 28, 2008 Draw (the "Draw") within certain timeframes. The law clearly dictates that Chemical Bank's failure to timely notify Matex of any discrepancies precludes Chemical Bank from later claiming discrepancies in the presentation of the Draw. Accordingly, all of Chemical Bank's previous arguments fail because it is uncontested that Chemical Bank did not notify Matex of any discrepancies by the legally imposed deadlines. * * *

Matex's Brief in Support of Mot. for Leave to File Sur-Reply at 1 (paragraph break added).

This court agreed that Chem should not be permitted to raise new arguments, issues or defenses for the first time in a reply brief. The court denied Matex leave to file a sur-reply, however, writing as follows:

> Chem could and should have raised the fraud argument in its brief supporting its own summary-judgment motion, or in a brief opposing Matex's summary-judgment motion [which Chem did not file]. The most logical course of action, however, is not to complicate and prolong this dispute, and consume more judicial resources, by allowing Matex to respond to an argument that is not properly before the court in the first place.
>
> The court sees no reason to depart from the well-settled rule that "this court will not consider arguments that are raised for the first time in a reply brief." * * * *accord Am. Traffic Solutions, Inc.* . . . (D. Ariz. Mar. 20, 2009) ("The remedy for dealing with new evidence first appearing in a reply is that we will not consider issues or evidence raised for the first time in [a] reply.") . . . .
> * * *
> **Accordingly, to the extent that Chem has asserted any new fraud argument, theory, or evidence in its reply brief, this court will disregard it.** This protects Matex's reasonable expectations about motions practice at least as much as allowing a sur-reply. And, unlike allowing a sur-reply, this course of action safeguards the party which apparently has been diligent in its briefing (Matex), without expending

judicial resources on an issue that its adversary (Chem) waived through inaction or oversight. * * *

*International-Matex Tank Terminals - Illinois v. Chemical Bank*, 2009 WL 1651291, *2-3 (W.D. Mich. June 11, 2009) (Maloney, C.J.) ("*Matex 2*")[7] (other citations omitted) (nn. 2 and 3 omitted).

**Similar reasoning applied with respect to *Chem's* subsequent motion for leave to file a sur-reply brief.** Rather than prolong and complicate this matter by adding another brief on an argument that is not properly before the court, the court determined that the better course was to disregard such arguments.

Chem argued that it needs a sur-reply brief for two reasons. First, it wished to counter Matex's argument that because Chem never filed a separate brief in opposition to Matex's motion for summary judgment, it effectively conceded all of Matex's factual allegations. The court reasoned that Chem did not need a sur-reply for this purpose, stating as follows:

> the court finds that [Chem']s decision not to file an opposition brief, while perhaps unwise, has not effected the blanket concession of Matex's factual allegations. As Chem notes, it filed affidavits with its own summary-judgment motion. The court will consider those affidavits as contesting the corresponding factual allegations made in Matex's complaint and opening summary-judgment brief.

Second, Chem explains it raised the issue of fraud

> in direct defense to the Motion for Summary Judgment. LOC 207-19 specifically states that "that if General Sales and Service, Inc. DBA Torco Racing Fuels does not have a bond issued to serve as collateral for the aforementioned contract, TOR-L1[, then] General Sales and Service, Inc. DBA Torco Racing Fuels agrees to have a *Letter of Credit available for the life of the said contract.*" (emphasis added). Matex terminated TOR-L1 on July 7, 2008. As of July 7, 2008,

---

[7]

"*Matex 1*" merely denied without prejudice as moot Chem's original motion for summary judgment, because Chem filed a corrected motion for summary judgment without withdrawing the original one. *See International-Matex Tank Terminals - Illinois v. Chemical Bank*, 2009 WL 1106732 (W.D. Mich. Apr. 23, 2009) (Maloney, C.J.) ("*Matex 1*").

[therefore,] LOC 2007-19 was no longer available to Matex.

Chem's Motion for Leave to File a Sur-Reply Brief at 2 (emphasis in original); *see also* Chem's Proposed Sur-Reply Brief at 2-3 ("Although Matex argues that the status of TOR-L1 [the Matex-Torco contract] is immaterial to this dispute, it ignores the clear language in LOC 2007-19. [U]nder paragraph 3 of Special Instructions . . . Torco . . . 'does not have a bond issued to serve as collateral for the aforementioned contract . . . . [Torco] agrees to have a letter of credit available for the life of said contract.").

A sur-reply brief is inappropriate for this purpose, because Chem could and should have fully developed and supported the terminated-contract defense in its opening summary-judgment brief or at least in its reply brief.

*The court will evaluate Chem's terminated-contract and LOC-only-for-life-of-the-contract defenses based on the arguments and authorities presented in Chem's opening summary-judgment brief and its reply brief supporting its motion* (it did not file a brief denominated as a brief in opposition to Matex's motion . . . ).

*International-Matex Tank Terminals - Illinois v. Chemical Bank*, 2009 WL _____, *_____

(W.D. Mich. Aug. 4, 2009) (Maloney, C.J.) ("*Matex 3*") (last ¶ break added) (some citations to

record and briefs omitted).

## ORDER

Plaintiff's motion for summary judgment [doc. # 37] is **GRANTED**.

Defendant's corrected motion for summary judgment [doc. # 40] is **DENIED**.

No later than Monday, November 23, 2009, the parties **SHALL JOINTLY FILE** a notice

stating the total amount which the defendant owes to the plaintiff as a result of today's opinion and

judgment, including, as applicable, any damages owing under MICH. COMP. LAWS § 440.5111(1),

pre-judgment interest under state law, post-judgment interest under federal law,[8] and attorneys' fees

---

[8]

The parties are advised that "[w]hen a federal court enters a judgment for monetary damages on a state-law claim, 'federal law controls post-judgment interest but state law governs awards of

and costs under MICH. COMP. LAWS § 440.5111(4) or other applicable authority.[9]

This is <u>not</u> a final order, because the amount of the defendant's liability has not yet been determined, and judgment has not yet been entered.[10]

**IT IS SO ORDERED this  5th  day of October,  2009.**

/s/ Paul L. Maloney
Honorable Paul L. Maloney
Chief United States District Judge

prejudgment interest.'" *Pinika, LLC v. MetLife, Inc.*, – F. Supp.2d –, –, 2009 WL 2713262, *12 (W.D. Mich. Aug. 24, 2009) (Maloney, C.J.) (quoting *Estate of Riddle v. So. Farm Bur. Life Ins. Co.*, 421 F.3d 400, 409 (6th Cir. 2005)).  Postjudgment interest is mandatory under 28 U.S.C. § 1961(a). *See Pinika*, – F. Supp.2d at –, 2009 WL 2713262 at *12 (citing *Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 586 (6th Cir. 2002)).

[9]

If the parties cannot agree on the amount which the defendant owes to the plaintiff, the notice should identify their areas of disagreement and concisely state their respective positions.  In such event, this court will refer the matter to the Magistrate Judge for determination pursuant to 28 U.S.C. § 636(b).

[10]

The final order will be appealable except to the following extent:  "[A]rguments not raised before the district court, including *arguments presented for the first time to a district court in a reply brief, generally are considered waived on appeal . . . .*"  *Shelby Cty. Health Care Corp. v. Majestic Star Casino*, Nos. 08-6078 and 08-6419, – F.3d –, –, 2009 WL 2997985, *22 n.7 (6th Sept. 22, 2009) (citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008)) (emphasis added).