UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

INTERNATIONAL-MATEX TANK            )
TERMINALS-ILLINOIS,                 )
                                    )
                    Plaintiff,      )      Case No. 1:08-cv-1200
                                    )
v.                                  )      Honorable Paul L. Maloney
                                    )
CHEMICAL BANK,                      )
                                    )
                    Defendant.      )
_____)

## REPORT AND RECOMMENDATION ON ATTORNEY'S FEES AND COSTS

This is a diversity action for wrongful dishonor of a letter of credit. The court has entered final judgment in favor of plaintiff in the amount of $213,361.01, representing the face amount of the letter plus accrued pre-judgment interest. (docket # 89). The only remaining issue concerns plaintiff's entitlement to an award of attorney's fees as allowed by U.C.C. § 5-111, MICH. COMP. LAWS § 440.5111. Chief Judge Maloney has referred this question to me for issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

Plaintiff has filed a motion for attorney's fees and expenses (docket # 81) seeking $155,787.60 in fees and $4,316.60 in expenses. After defendant filed its objections, plaintiff supplemented its motion to seek an additional $34,219.08 in fees and expenses for post-judgment proceedings. (docket # 85). All told, plaintiff seeks an award of $190,006.68 in attorney's fees and expenses to recover on a $200,000.00 letter of credit. No party has requested an evidentiary hearing.

After reviewing the record and submissions of the parties, I conclude that plaintiff's request is grossly excessive as to both the hourly rates claimed and the number of hours expended. I therefore recommend that an award of attorney's fees and costs be entered in favor of plaintiff in a substantially reduced amount.

## Discussion

### 1. General Principles

In a diversity case, the question whether attorney's fees should be awarded is considered a substantive issue governed by state law. *See Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 259-60 n.31 (1967). Michigan law, which controls the substantive issues regarding the letter of credit, also controls the issue of attorney's fees. Michigan follows the American rule, under which attorney's fees are not recoverable unless expressly allowed by statute, court rule, contract, or common-law exception. *See Nemeth v. Abonmarche Dev., Inc.*, 576 N.W.2d 641, 652 (Mich. 1998). Here, an award of fees is authorized by Michigan statute. The Michigan U.C.C. provides that "reasonable attorney's fees and other expenses of litigation shall be awarded to the prevailing party in an action in which a remedy is sought" under Article V. MICH. COMP. LAWS § 440.5111(5).

In applying Michigan law to the attorney's fees issue, the court is to be guided by the principles flowing from the landmark decision in *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938), and its progeny. The court is to determine how the Michigan Supreme Court would rule on the issues in the case, by examining state supreme court decisions and, if those decisions are inconclusive, other relevant sources of state law, including decisions of the state intermediate appellate court. *See*

*Pennington v. State Farm Mut. Auto Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). Chief Judge

Maloney has cautioned that a district court applying Michigan law to attorney's fees disputes should

be guided by Michigan precedents and not automatically apply federal case law in the absence of a

clear indication that the state courts would follow federal precedents. *Polyflex Constr., Inc. v. Neyer*

*Tiseo & Hindo, Ltd.*, 600 F. Supp. 2d 897, 914-15 (W.D. Mich. 2009).

      The most important Michigan Supreme Court decision on the question of attorney's

fees is *Smith v. Khouri*, 751 N.W.2d 472 (Mich. 2008), the most recent Supreme Court decision on

the issue. The *Smith* court established the following methodology for review of an attorney's fee

petition:

> In determining a reasonable attorney fee, a trial court should first determine the
> fee customarily charged in the locality for similar legal services. In general, the court
> shall make this determination using reliable surveys or other credible evidence.
> Then, the court should multiply that amount by the reasonable number of hours
> expended in the case. The court may consider making adjustments up or down to this
> base number in light of the other factors listed in *Wood* [*v. Detroit Auto. Inter-Ins.*
> *Exch.*, 321 N.W.2d 653 (Mich. 1982)] and MRPC 1.5(a).

751 N.W.2d at 483. The *Wood* case cited by the *Smith* court listed six factors for consideration,

while Michigan Rule of Professional Conduct 1.5(a) sets forth eight factors, which overlap the *Wood*

factors. *See Smith*, 751 N.W.2d at 479. The factors set forth in Mich. R. Prof. Cond. are:

    (1)      the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

    (2)      the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

    (3)      the fee customarily charged in the locality for similar legal services;

    (4)      the amount involved and the results obtained;

    (5)      the time limitations imposed by the client or by the circumstances;

(6)    the nature and length of the professional relationship with the client;

(7)    the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8)    whether the fee is fixed or contingent.

MICH. R. PROF. COND. 1.5(a).  Michigan law places on the party seeking attorney's fees the burden of proving that the requested fees are reasonable.  751 N.W.2d at 478.

I will discuss each of the relevant factors in turn.

2.    **Reasonable Hourly Rate**

The court must begin its analysis by determining the fee customarily charged in the locality for similar legal services, which is factor 3 under Mich. R. Prof. Cond. 1.5(a).  *See Smith*, 751 N.W.2d at 479.  Plaintiff seeks to recover the following hourly rates for the five attorneys[1] who worked on this case:

| Attorney | Year | Rate |
|---|---|---|
| David Rieser | 2008 | $500 |
|  | 2009 | 540 |
|  | 2010 | 585 |
| Brian P. O'Meara | 2008 | 355 |
|  | 2009 | 425 |
|  | 2010 | 465 |
| Jonathon H. Chester | 2008 | 315 |
|  | 2009 | 315 |
| Laura Lange | 2009 | 320 |
|  | 2010 | 320 |

---

[1] Plaintiff also seeks to recover time expended by a paralegal, a librarian and a docket clerk. These claims are analyzed in section 3.g. below.

| Attorney | Year | Rate |
|----------|------|------|
| Andrew Woltman | 2010 | 355 |

In determining the rate customarily charged in the locality, "the court should use reliable surveys or other credible evidence of the legal market." *Smith*, 751 N.W.2d at 479. Citing the U.S. Supreme Court decision in *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984), the *Smith* court emphasized that the burden is on the fee applicant to produce satisfactory evidence that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation, and that this burden is not met by the attorney's own affidavit. 751 N.W.2d at 480. Contrary to the requirements of both *Smith* and *Blum*, plaintiff's fee application relies on no objective evidence tending to show that the claimed rates are in line with market rates in the West Michigan area for lawyers of similar ability and experience. Rather, each of the attorneys who worked on the plaintiff's case merely sets forth his or her customary rates, averring without evidentiary support that each rate is reasonable. The *Smith* court stated that the touchstone is the fee "customarily charged in the locality for similar legal services" and that this must be established by testimony "or empirical data found in surveys or other reliable reports." 751 N.W.2d at 480. Plaintiff's application is unsupported by any empirical data.

Beyond their own conclusory affidavits, plaintiff's attorneys do not submit to the court any objective evidence showing that the rates claimed are in line with market rates in the West Michigan area for lawyers of similar ability and experience. Plaintiff instead relies on an "exception," under which the court may award out-of-town attorneys the reasonable rates charged in their home district in certain circumstances. Plaintiff relies only on federal cases to establish the existence of this exception. This argument is unavailing. First, plaintiff fails to support the

argument with any Michigan authority. The *Smith* court stated more than once that the appropriate starting point is the "*fee customarily charged in the locality* for similar services." *Smith*, 751 N.W.2d at 479 (emphasis added). The Michigan Rule of Professional Conduct contains the same limitation. MICH. R. PROF. COND. 1.5(a)(3). Plaintiff has cited no Michigan authority suggesting that the Michigan courts would be inclined to accept the federal "exception" upon which plaintiff relies and, in light of the language in *Smith*, such a conclusion seems improbable. Second, even assuming that the Michigan courts would follow the cited federal cases, the exception that they frame is exceedingly narrow. For example, in the unpublished case *Brian A. v. Hattaway*, 83 F. App'x 692 (6th Cir. 2003), the Sixth Circuit panel affirmed the use of New York billing rates for out-of-town counsel based on a finding that "there was no local attorney or coalition of local attorneys who had the resources, expertise, or willingness to bring" the class action lawsuit. 83 F. App'x at 695. No such showing has been made in the present case, nor could it be. Likewise, *Maceira v. Pagan*, 698 F.2d 38 (1st Cir. 1983), also cited by plaintiff, involved a party in Puerto Rico who was required to resort to an out-of-town specialist to find appropriate representation. 698 F.2d 40. The First Circuit noted, however, that in the "ordinary case requiring no specialized abilities not amply reflected among local lawyers," the local rate is "the appropriate yardstick." *Id.* In the present case, West Michigan has a plethora of commercial lawyers well-suited to handle a straightforward suit to collect on a letter of credit. Plaintiff is certainly privileged to retain its usual counsel to prosecute a case in Michigan, but it is not privileged to impose upon defendant the cost of plaintiff's choice. Thus, the not-very-well-established "exception" to the locality rule would not apply in the present case, even if the Michigan courts were to accept it as an abstract principle. Finally, plaintiff has not even

presented objective evidence showing that the claimed rates are in line with market rates in Chicago, Illinois.

Under Michigan law, the court's first task, therefore, is to ascertain the fee customarily charged in the Western Michigan locality for similar services. In addressing this issue, the *Smith* court gave special endorsement to the periodic surveys conducted by the State Bar of Michigan (SBM) on prevailing market rates for legal services in this state. 751 N.W.2d at 480. The most recent survey, conducted in the year 2007, is attached to defendant's response. (docket # 84). The 2007 SBM survey reflects median hourly billing rates by firm size, years in practice, and field of specialty. Plaintiff's law firm, McGuire Woods, LLC, employs approximately 900 lawyers. The survey results do not address firms of this size, so the survey results are not helpful with regard to the firm size measure. The survey indicates that the median litigation hourly rate for attorneys in practice for 27 years (Mr. Rieser's years in practice as of the date of the survey) was $200. (p. 20). The median litigation hourly rate for attorneys such as Brian O'Meara, who had been in practice for six years as of the date of the survey, was $175. The median rate for newly admitted attorneys, such as Jonathon H. Chester, Laura A. Lange, and Andrew Woltman was also $175 per hour in 2007. (*Id.*). The survey shows that the median billing rate by field of practice with regard to business litigation was $200 per hour. (p. 21). The median billing rate for litigation services in the Grand Rapids area was $237.50 in 2007. (p. 23).

Although the SBM 2007 study reflects fees at the 75th and 90th percentiles, as well as median fees, I find that the median fee more accurately reflects the fee "customarily charged" in the locality. The *Smith* court expressly disapproved the award of a $450 hourly rate, which the trial judge had found was commanded by "top trial attorneys in Oakland County." 751 N.W.2d at 481.

The *Smith* court remarked that, although some trial attorneys have such rates, "the fee customarily charged in the locality for similar legal services, which likely is different, should be the measure. That is, reasonable fees are different from the fees paid to the top lawyers by the most well-to-do clients." *Id.* In light of this holding, the median fee appears to be the appropriate starting point, with adjustments allowable thereafter on the basis of the particular circumstances of the case, as reflected in Mich. R. Prof. Cond. 1.5(a).

Resort to the SBM 2007 survey would justify, at most, a 2007 billing rate for Mr. Rieser and Mr. O'Meara (both partners) of $237.50. Mr. Chester, Mr. Woltman, and Ms. Lange, all associates, would be compensable at the rate of $175 per hour. The time expended by plaintiff's counsel in this case, however, was in the years 2008 through 2010. The 2007 rates reflected in the SBM survey must therefore be adjusted. I note that during this time the rates charged by both Mr. Rieser and Mr. O'Meara escalated sharply. Mr. Rieser's 2008 rate of $500 per hour increased 8% to $540 in 2009 and another 8.3% to $585 in 2010. Even more precipitously, Mr. O'Meara's 2008 rate of $355 increased by nearly 20% to $425 in 2009 and by 9.4% to $465 in 2010. These precipitous rate increases were typical of large law firm practice at the time. Such rate increases, imposed at a time of falling demand for legal services and a low rate of inflation, are now recognized to have been unwise and a major cause of the economic dislocation now facing many major law firms. Far from "reasonable," such billing practices are more accurately described as disastrous. Such increases cannot form the basis for the computation of a reasonable attorney's fee.

To account for the passage of time since the SBM 2007 survey, it would be more reasonable to turn to cost-of-living data kept by the Bureau of Labor Statistics of the Department of Labor. The BLS indicates that the rate of inflation from December 2007 through December 2008

was .09%; the inflation rate between December 2008 and December 2009 was 2.72%; the rate between December 2009 and April 2010 was .95%. These inflation rates provide an equitable yardstick by which to adjust the 2007 fee schedules set forth in the SBM survey. The resulting rates are shown below:

| Attorneys | 2007 Survey Rate | 2008 Rate | 2009 Rate | 2010 Rate |
|---|---|---|---|---|
| Rieser and O'Meara | $ 237.50 | $ 237.71 | $ 244.18 | $ 246.62 |
| Chester, Woltman, & Lange | $ 175.00 | $ 175.16 | $ 179.92 | $ 181.72 |

In summary, on the issue of reasonable hourly rates, I find that the rates suggested by the SBM 2007 survey provide reasonable and adequate compensation, after an adjustment for inflation. Plaintiff has provided no objective evidence to support any different hourly rates.

### 3. Hours Reasonably Expended in the Case

The court must next determine the number of hours reasonably expended in the case (factor no. 2 under Mich. R. Prof. Cond. 1.5(a)). *Smith*, 751 N.W.2d at 479. This undertaking requires the court to determine the reasonable number of hours expended by each attorney. The court must examine "detailed billing records" submitted by the applicant, who bears the burden of supporting its claimed hours with evidentiary support. *Id.* at 480.

In the present case, plaintiff's initial application seeks to recover for the following hours:

| Attorney | Number of Hours Claimed |
|----------|-------------------------|
| David Rieser | 36 |
| Brian O'Meara | 286 |
| John Chester | 20.5 |
| Laura Lange | 12.5 |
| Clerical | 2.9 |

(Motion, docket # 81, ¶ 3). The original motion covers the period ending March 31, 2010, and is supported by billing records. The supplemental motion (docket # 85) covers the time period April 1 through May 17, 2010. It seeks to recover for the following expenditures of time, devoted to the issues of damages and attorney's fees:

| David Rieser | 3.5 |
| Brian O'Meara | 31.1 |
| John Chester | 11 |
| Andrew Woltman | 38.3 |
| Paralegal/clerical | 1.2 |

Plaintiff, however, has submitted time records only for the period April 1 through April 30, 2010. The time expended in May 2010 is covered by conclusory statements in attorney affidavits.

In sum, plaintiff seeks compensation for 355 attorney hours devoted to procuring a summary judgment of liability and 83.9 attorney hours devoted to the calculation of damages and attorney's fees. This is 438.9 hours, which convert to almost eleven solid 40-hour weeks of effort, devoted to recovering on a $200,000 standby letter of credit. By any measure, this must be deemed an excessive expenditure of time. To be sure, some of the wasted time is the fault of defendant, who

raised questionable defenses throughout the course of these proceedings and therefore required plaintiff to move for summary judgment, defend a cross-motion for summary judgment, and defend an unmeritorious challenge by defendant on the issue of damages. To that extent, defendant must bear some of the blame (and the resulting expense) for the expenditure of time by plaintiff's counsel in collecting on the letter of credit. Nevertheless, the expenditure of almost three solid months of attorney time to recover on a $200,000 letter of credit, in a case involving no trial, no in-court hearings, and no depositions, is grossly excessive on its face.

It is not enough, however, for the court to conclude that a fee petition appears excessive on its face. Under Michigan law, the court has the obligation to scrutinize bills "line-by-line" to determine whether each attorney spent a reasonable amount of time on each discrete task. *Polyflex Constr., Inc.*, 600 F. Supp. 2d at 918 (citing *Bonkowski v. Allstate Ins. Co.*, 761 N.W.2d 784, 797 (Mich. Ct. App. 2008)). Employment of line-by-line scrutiny of plaintiff's time records discloses concrete reasons to conclude that the hours devoted to litigating this matter were not reasonably expended.

**a.**

This case was seriously over-lawyered on the plaintiff's side. It is difficult to understand how a straightforward collection action merits the time and attention of five attorneys -- two partners and three associates. Such staffing decisions inevitably create duplication and inefficiencies. Many experienced commercial litigators would have opted to handle this case alone, given its limited *ad damnum* and the relative simplicity of the issues presented. Perhaps the help of a very junior associate to perform research and writing tasks would have been reasonable as well.

But plaintiff has not justified the need to engage two partners and three different associates on a rather straightforward collection matter.

The time expended by Mr. Rieser, the partner in charge, does not appear to have added any value to the litigation. Mr. Rieser billed over 36 hours to the case which, at his regular rates, amounts to approximately $20,000 in billings - 10 percent of the amount in controversy. Even at the more reasonable rates recommended herein, Mr. Rieser is billing approximately $10,000 to this case. The nature of Mr. Rieser's activities on the case, however, does not justify such an expense. Mr. Rieser's time is devoted almost entirely to review of documents drafted by others, exchanging e-mails with Mr. O'Meara, and interoffice conferences with him. The nature of the e-mail exchanges and conferences is impossible to discern, as plaintiff has redacted the subject matter from each time entry. Nevertheless, it is a puzzlement that a partner of Mr. O'Meara's experience and years of practice would need such close supervision by another partner, who himself was doing nothing on the case. This was not a complicated class-action case, nor was it a multiple-party environmental matter. It was essentially a collection case, in which the law is stacked strongly in the plaintiff's favor. A junior partner should have required no supervision whatsoever from a senior partner. Although the frequent document reviews, e-mail exchanges, and conferences might serve some need of the client or the firm, it is not reasonable to charge this overhead to the defendant in a case of this nature. The only substantive work reflected in Mr. Rieser's time records is attendance at a settlement call with opposing counsel on March 3, 2010. This entry is "block billed" with other time devoted to the case -- review of a draft status report and a conference with Mr. O'Meara on a redacted subject. I recommend giving plaintiff credit for one hour of Mr. Rieser's time devoted to the settlement conference call on that day. The supplemental motion seeks another 3.5 hours for Mr.

Rieser's time, again devoted to review of the work of others and conferences. This overhead also appears unjustified. In summary, I recommend disallowing all but one hour of Mr. Rieser's time in this case.

Review of the time expended by the associates assigned to the case shows inefficiency of another sort. As is common with young associates in large firms, the associates were guilty of spending inordinate time conducting research. For example, Mr. Chester spent 1.2 hours on November 25, 2008, researching the question whether a district court without personal jurisdiction over the defendant can transfer a case to a different venue. The answer to this question has been "yes" for almost fifty years. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463 (1962). A young lawyer should have remembered the answer to the question from law school; a seasoned federal court litigator should have been able to locate the relevant law without the necessity for much research. Likewise, Mr. Chester spent 3.9 hours on March 6, 2009, researching whether an underlying contract is independent of a letter of credit. The "independence principle" is a bedrock doctrine of letter-of-credit law. An investment of ten minutes with one of the standard treatises on commercial law would have uncovered substantial authority in support of the principle, *see* 3 JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE § 26-2 at 138 (5th ed. 2008). It is hard to see how this task deserved more than an hour or two. The rest of the time was spent researching whether a suit on a letter of credit could be determined by motion for summary judgment. As most letter-of-credit cases brought in the federal courts are decided on summary judgment motion, this can hardly be deemed an elusive proposition.

Ms. Lange spent 2.3 hours on January 26, 2010, researching Illinois bailment law and the effect of Rule 59 on the time for filing objections under Rule 72, two issues that were of

minuscule relevance to this case and never appeared in the briefing. She spent five solid hours researching federal and state law on pre- and post-judgment interest (10/30/09, 11/02/09), ultimately getting it wrong by having post-judgment interest accrue prematurely. At the risk of heaping Pelion upon Ossa, I will mention one more example. In the entry of June 5, 2009, Mr. Chester claims 1.4 hours for researching "the purpose of a letter of credit," certainly a fruitless exercise. To compensate for the patent inefficiencies demonstrated by the time records in the expenditure of associate time, I recommend that all such time be reduced by twenty percent.[2]

### b.

Defendant objects, with good reason, to the 33.5 hours expended by plaintiff's attorneys in researching and responding to defendant's motion to dismiss this case, when the case was in the Northern District of Illinois. The docket sheet discloses that plaintiff initiated this case in the Northern District of Illinois by complaint filed September 12, 2008. The complaint devoted only one sentence to the issues of personal jurisdiction and venue, alleging in conclusory form that venue was proper in that district because Chemical Bank "transacts business in Illinois and is subject to personal jurisdiction in the Northern District of Illinois." (Compl. ¶ 4). On October 3, 2008, defendant filed a motion to dismiss for lack of jurisdiction and for improper venue, pursuant to Fed. R. Civ. P. 12(b)(2) and (3). (docket # 10). The motion sought dismissal of the case; neither the motion nor the supporting brief invoked 28 U.S.C. § 1404 to seek a transfer for the convenience of parties and witnesses. The court set a briefing schedule, requiring a response by plaintiff no later than November 25, 2008. (docket # 12). On the appointed day, plaintiff filed a two-page response,

---

[2] The time entries that are discounted or disallowed pursuant to this section of the report and recommendation are identified by code "a" on the attached spreadsheet.

asserting that venue and jurisdiction in the Northern District were indeed proper but consenting to the transfer of the case to the Western District of Michigan to avoid a prolonged briefing and ruling on defendant's motion to dismiss. (docket # 13). Plaintiff then filed a motion to expedite transfer citing 28 U.S.C. § 1406(a), which presupposes improper venue, as the basis for the requested transfer. (docket # 14, ¶ 3). On February 2, 2008, Judge Joan Lefkow entered a minute order transferring the case to this court, without citing a basis for the transfer. Since the only grounds raised by defendant's motion were lack of personal jurisdiction and improper venue, the only basis for a transfer was 28 U.S.C. § 1406(a), which empowers the district court to transfer a case filed in the wrong district to any district in which the case could have been brought.

Given the simplicity of plaintiff's response, it is startling to find that plaintiff's attorneys expended over 33 hours reviewing, researching, and drafting in response to the motion to dismiss. Plaintiff does not attempt to explain why almost a week of work was a necessary predicate to this capitulation. Presumably, if the research and analysis disclosed a strong case in favor of venue and jurisdiction in the Northern District of Illinois, plaintiff would have opposed the motion to dismiss and thereby retained whatever advantage plaintiff perceived in litigating the case in its home forum. In light of plaintiff's decision to relent on the issue, it must be assumed that the research showed some merit in defendant's position, such that expending further resources litigating the issue would not be fruitful. In any event, it is not at all clear why it took over 30 hours of effort to come to this conclusion. The general rules governing long-arm jurisdiction and venue should be well understood by litigators with the experience of Messrs. Rieser and O'Meara, such that extensive research would not be necessary to arrive at the basic strategic decision whether to oppose the

motion. No more than ten hours should have been necessary to review and research the issue preparatory to deciding to concede the point.

I have already recommended disallowance of 2.7 hours billed by Mr. Rieser during the period October 3 through November 25, 2008, and reducing 1.3 hours billed by Mr. Chester during this period. To avoid double-counting, I have subtracted these hours from the 33.5 hours billed during this time period. I suggest that the remaining 29.5 hours be reduced by 67 percent to reflect a more reasonable expenditure of time (9.7 hours) for evaluating the motion to dismiss and consenting to a transfer. These time entries are identified by code "b" on the attached spreadsheet.

### c.

The attorney time expended between December 2008 and early October 2009 was devoted to case preparation, including participation in a Rule 16 scheduling conference, responding to defendant's discovery requests, and briefing in connection with the cross-motions for summary judgment. Mr. O'Meara was the principal attorney responsible for these activities during this period. The time that Mr. O'Meara devoted to these tasks seems high, but I have no basis to conclude that the time was excessive or that it should be reduced in any categorical fashion. As noted above, the expenditure of this time and effort should have been unnecessary but was required as a result of defendant's dogged refusal to acknowledge its clear liability on the letter of credit.

The billing of time for one activity, however, is glaringly improper. After the case was transferred to this court, Mr. O'Meara billed time on several different days for activities in connection with his admission to the bar of this court. (12/18/08, 1/05/09, 1/06/09, 1/09/09). Although the amount of time devoted to this task was rather minor, charging a client for the lawyer's

admission to the bar of a federal court is patently improper. Just as an attorney must be admitted to the state bar as a prerequisite for the privilege of practicing law, so must the attorney be admitted to the bars of various federal courts in which they practice. The effort and expense of receiving this credential is the responsibility of the lawyer, not the client. It is startling that lawyers would even consider charging their clients for such activity; it is even less appropriate to tax this time as a reasonable attorney fee against the opposing party.

Because the admission activities are "block billed" with other, proper charges, it is not possible to excise with precision the time improperly billed for this activity. Any risk of imprecision in this regard should fall on plaintiff, because of the inadequate time records in this regard. As a rough estimation of the time spent by Mr. O'Meara in having himself and Mr. Rieser admitted to the bar of this court, I recommend disallowing the 1.1 hours he billed to this and other tasks on January 6, 2009. This item is identified on the attached spreadsheet by code "c."

In summary, my recommendation for the period between December 2008 and the entry of summary judgment in plaintiff's favor on October 5, 2009, is to allow all of Mr. O'Meara's time, except for the 1.1 hours noted, to disallow all of Mr. Rieser's time for the reasons set forth in section 3.a. above, and to reduce the associate time by 20 percent, as indicated.

### d.

The next phase of the litigation came in response to Chief Judge Maloney's summary judgment order, which found defendant liable on the letter of credit but left the determination of damages and attorney's fees for further proceedings. The court directed the parties to file a joint statement calculating damages. The parties did so, but the statement resolved nothing, as defendant

insisted on raising a defense which has been called the "mitigation defense" in previous opinions. Judge Maloney referred the matter to me for further proceedings, which included telephonic scheduling conferences, a very limited period of discovery, some motion practice, and finally briefing on the question of damages. Again, this entire exercise should and could have been avoided by defendant, as defendant had no substantial defense on the question of damages.

Although much of the time spent by plaintiff's attorneys in this needless exercise was reasonable, the time invested in researching and briefing plaintiff's brief on damages was excessive. Review of plaintiff's brief (docket # 80) discloses at least one reason -- plaintiff's attorneys researched and raised hypertechnical and ultimately unpersuasive arguments in response to defendant's brief. Defendant's position was not meritorious, principally because defendant was attempting to rely on noncompliance with the underlying agreement between IMTT and Torco as a defense to the letter of credit. In addition to raising the "independence principle" in response to defendant's improper argument, plaintiff raised weak procedural arguments, which I labeled "extravagant" in my report and recommendation. For example, plaintiff attempted to argue that defendant could not rely on the Torco contract because defendant had not sought production of that agreement during the discovery period. In making this argument, plaintiff ignored the fact that I reopened discovery after the summary judgment decision for the very purpose of allowing production of the Torco contract. Plaintiff did not appeal this discovery order. In these circumstances, no court in this country would have accepted plaintiff's argument that defendant was precluded from relying on the contract on procedural grounds. Likewise, plaintiff raised a weak waiver argument. Given the strength of plaintiff's substantive position, the decision of its attorneys to spend the client's money and waste the court's time on a procedural sideshow should not be rewarded.

Again, plaintiff's method of block billing makes it difficult to excise unreasonable time with any precision. The individual time entries indicate that both Mr. Woltman and Mr. O'Meara spent time researching and drafting with regard to the "discovery" and "waiver" issues. I recommend reducing the time set forth in the supplemental petition (docket # 85) devoted to research and briefing on the damages issue by 5 hours for O'Meara and 4.3 for Woltman. On the attached spreadsheet, I have reduced Mr. Woltman's hours on April 1, 2010, by 4.3 hours, and Mr. O'Meara's by 5 hours on April 8, 2010. (Identified by code "d"). In addition, I have also applied the 20 percent reduction to all associate time for the reasons set forth above.

### e.

The time spent on drafting the fee petition and supporting brief is especially disturbing. A proper application for attorney's fees should include (1) detailed time records, (2) objective evidence of prevailing market rates, such as surveys produced by bar associations or consulting firms, and (3) a brief establishing the relevant principles of Michigan law governing awards of attorney's fees. Preparation of the detailed time records is a clerical matter, although it would require some review by an attorney. The procuring of relevant surveys or other evidence of market rates should not be time-consuming, as these resources are readily available. And about thirty minutes of research would uncover both the Michigan Supreme Court's decision in *Smith v. Khouri*, and Chief Judge Maloney's decision in *Polyflex Construction*, which are certainly the most important cases for this purpose, although not the only relevant authority. The entire undertaking should have consumed fewer than 10 hours of attorney time.

Plaintiff's submissions on the attorney's fee issue were woefully inadequate. Of the three required components, plaintiff provided just one -- a detailed statement of time expended. Even this was not wholly satisfactory, as the block-billing method makes it difficult or impossible to allocate a precise number of hours to multiple tasks performed during the day. Plaintiff failed completely to present objective evidence of prevailing market rates, either in Michigan or in the district in which counsel practice. Finally, plaintiff's brief in support of its motion was essentially worthless. The brief (docket # 82) failed even to acknowledge that Michigan law controls the question of attorney's fees. The brief cited no Michigan cases for any substantive issue (except for the completely uncontroversial proposition that plaintiff is a prevailing party) and relied on federal cases. As a result, the brief contains affirmative misstatements of law. One example should suffice. Citing federal law, plaintiff asserts that the "lodestar" figure is presumed to be a reasonable attorney's fee. (Brief at 6). As Chief Judge Maloney has pointedly remarked, the Michigan courts reject this principle of federal law. *Polyflex Constr., Inc.*, 600 F. Supp. 2d at 915. Plaintiff's brief, if followed by the court, would have led the court into error. If the function of a party's brief is to help the court, the value of plaintiff's brief was exactly nothing.

The billing statement attached to plaintiff's supplemental request for fees contains 45.9 hours apparently devoted to the fee petition and attachments from April 6 through April 29, 2010. (Again, block billing makes precision difficult in this regard.) Given the patent inadequacies of plaintiff's fee petition, this expenditure of time is excessive and unreasonable. I have reduced the billings devoted to the fee petition and supplement by 14.9 hours to reflect other adjustments discussed elsewhere (discounting associate time and disallowing the time of Mr. Rieser and the clerical staff). This leaves 31 hours (45.9 minus 14.9). I recommend that the remaining 31 hours

be reduced by 67 percent to 10.23 hours. The expenditure of 10.23 hours (about two days of time) should have been sufficient to assemble a fee petition properly supported in both fact and law. Given that plaintiff's fee petition was inadequate in both respects, 10.23 hours is more than generous. The reductions recommended in this section are designated by code "e" on the attached spreadsheet.

### f.

The supplemental petition seeks to recover for attorney hours that are not supported by detailed billing records. Any hours incurred between May 1 and May 17, 2010, are reflected only in affidavits, in a most conclusory fashion. (*See* Supplemental Petition, docket # 85, ¶ 6). In light of plaintiff's inadequate presentation of its request for attorney's fees, I would be disinclined to recommend allowance of any further time devoted in May to this project. This time, however, must be disallowed in its entirety on legal grounds. Under Michigan law, the fee applicant "must submit detailed billing records, which the court must examine and opposing parties may contest for reasonableness." *Smith*, 751 N.W.2d at 480. None of the time claimed for the period May 1 through May 17, 2010, is supported by the required records. I therefore recommend that all time for this period be disallowed. Because plaintiff has not provided billing records for this period, none of this time is reflected on the attached spreadsheet.

### g.

Plaintiff's fee request includes time spent by paralegals, librarians, and other clerical staff. Plaintiff does not cite any Michigan authority allowing recovery for such clerical time, nor could it. Under Michigan law, only time expended by an attorney should be taxed against the opponent. *See Joerger v. Gordon Food Service, Inc.*, 568 N.W.2d 365, 371 (Mich. Ct. App. 1997).

The time spent by secretaries, messengers, paralegals, and other clerical staff whose labor contributes to the attorney's work, is a part of overhead. *Id.*; *accord Allard v. State Farm Ins. Co.*, 722 N.W.2d 268, 275 (Mich. Ct. App. 2006). I therefore recommend disallowing all time claimed for paralegal and clerical work. This time is identified on the attached spreadsheet by code "g."

### 4. Other Factors

Multiplying the reasonable hourly rate by the reasonable hours billed produces a "baseline figure." *Smith*, 751 N.W.2d at 480. To calculate the baseline figure, I have prepared a spreadsheet, attached to this report and recommendation. The spreadsheet reflects only time shown on the detailed billing records attached to plaintiff's motion and supplement. The spreadsheet does not reflect time claimed in May 2010, for which no billing records are before the court. As discussed in part f., those hours are not compensable, as a matter of law. This accounts for the discrepancy between the total hours claimed and the claimed hours shown on the spreadsheet.

As shown on the attached spreadsheet, multiplication of the customary hourly rate by the reasonable number of hours expended renders a baseline of $74,471.31. This figure serves as the "starting point for calculating a reasonable attorney fee, but is not presumed reasonable." *Polyflex Constr., Inc.*, 600 F. Supp. 2d at 916. After calculating the baseline, the court must determine whether upward or downward adjustment is appropriate by considering other relevant factors. The factors set forth in Mich. R. Prof. Cond. 1.5(a) (which overlap those listed in *Wood*, 321 N.W.2d at 661), are most relevant, but are not necessarily exclusive.

Several of the factors set forth in Mich. R. Prof. Cond. 1.5(a) could, in certain circumstances, increase or decrease the baseline rate. Factor no. 1 focuses on the time and labor

required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly. Application of this factor to a case of unusual complexity could serve to increase the baseline rate necessary to compensate counsel properly. A suit to collect on a standby letter of credit, however, does not remotely qualify as a case of unusual complexity. The law governing letters of credit is found in article 5 of the U.C.C., the Uniform Customs and Practice for Documentary Credits (UCP), and case law. It is a finite body of law, well-summarized and easily accessible through treatises and other secondary sources. It is only a small part of the law governing banking and commercial transactions. Few lawyers "specialize" in litigation involving letters of credit. The task of plaintiff's counsel in such litigation is generally rather straightforward, as the law recognizes few defenses. The present lawsuit did not present any novel or difficult questions, nor did it require unusual skill or experience. Liability was established on cross-motions for summary judgment, without the necessity for virtually any discovery. Many commercial litigators of average skill and experience would have been perfectly capable of handling this case. No premium is warranted by factor no. 1.

Factor no. 2 focuses on the likelihood that acceptance of a case will preclude other employment. Plaintiff has presented no evidence to support this factor, nor is it likely that accepting a $200,000 collection action might have such an effect on a firm with nearly 1,000 lawyers.

Factor no. 4, which focuses on the amount involved and the results obtained, could also merit an increase in compensation in a high-stakes case. In this case, however, the amount in controversy was comparatively small, as the letter of credit was limited to $200,000.00. This factor should have counseled the exercise of care to ensure that legal fees were held to a minimum, but

apparently did not. The result obtained, although favorable, should not have been unexpected. It is the rare case of this nature that is lost by a plaintiff.

Factor no. 5 concerns the time limits imposed on counsel by the client or by circumstances. No evidence has been presented by either party on this factor. Factor no. 6 (the nature and length of the professional relationship with the client) does not appear germane to this case. Although certain kinds of cases might be handled more efficiently by an attorney intimately familiar with the client's history and operations (*e.g.*, a securities or antitrust case), this was not such a case.

The experience, reputation, or ability of the lawyers involved (factor no. 7) do not merit a premium. The biographical sketches appended to plaintiff's motion show that Attorney Rieser has been in practice for approximately thirty years, but specializes in environmental law. Attorney O'Meara, who had less then ten years of experience during the time this matter was litigated, specializes in commercial litigation, but his biographical sketch does not reflect any particular expertise in banking or letter-of-credit litigation. Attorneys Chester, Woltman, and Lange were beginning associates. That a client would pay over $300 an hour for the time of a neophyte lawyer is surprising; even the median rate in Michigan of $175 per hour seems generous for lawyers still learning their trade. The excessive time expended by all of plaintiff's attorneys in this case, as noted in section 3 above, confirms that they were not acting with the level of efficiency that might justify a higher hourly billing rate or an increase in the baseline compensation. Furthermore, this particular case did not require any unusual experience or expertise and could have been handled successfully by many commercial litigators of average ability.

Finally, the record does not disclose that a premium is warranted because of the risk undertaken by counsel in a contingent-fee case (factor no. 8).  As plaintiff correctly observes, this listing of factors is not exclusive.  The court may consider other factors, but must do so expressly and justify the relevant of the additional factor.  *Smith*, 751 N.W.2d at 480 n.15.  Plaintiff has suggested that other factors might support its claim for fees that far exceed the baseline, but it has not presented any persuasive factual or legal support for its position.

In summary, I conclude that the baseline fee is fair and adequate and that no factors exist to support an increase or decrease from the baseline fee.

### 5.    Costs and Expenses

In addition to an award of reasonable attorney's fees, the U.C.C. allows the prevailing party in a suit for wrongful dishonor of a letter of credit to receive an award of "other expenses of litigation."  U.C.C. § 5-111(5), MICH. COMP. LAWS § 440.5111(5).  As used in this section, "expenses of litigation" is intended to be broader than taxable costs.  "For example, expense of litigation would  include travel expenses of witnesses, fees for expert witnesses, and expenses associated with taking depositions."  U.C.C. § 5-111 cmt. 6.  Plaintiff's application for fees and expenses seeks an award of expenses in the amount of $4,316.60.  The supplemental application seeks an additional $52.08, for a total of $4,368.68.  These expenses go far beyond the scope of taxable costs but, as noted, the statute does allow recovery of litigation expenses that exceed taxable costs.

Defendant has not objected to the taxation of any of these expenses.  One category of expense, however, appears completely inappropriate.  Both Mr. Rieser and Mr. O'Meara attempt to

tax as costs the $175 admission fee necessary to become a member of the bar of this court, as well as ancillary expenses necessary to procure certificates of good standing in support of their applications for admission. As discussed above, the expense of obtaining such professional credentials is not appropriately charged to one's own client. Far less appropriate is taxation of such admission and related fees as reasonable litigation expenses against the opponent. I therefore recommend disallowing the following costs claimed by plaintiff:

| | | |
|---|---|---|
| 1/05/2009 | Clerk of the Supreme Court - Certificates of good standing for admission of BP O'Meara to USDC WD Michigan | 2.00 |
| 1/05/2009 | FedEx Priority Overnight to Clerk of Illinois Supreme Court | 13.94 |
| 1/06/2009 | FedEx Priority Overnight from Clerk of Illinois Supreme Court | 9.86 |
| 1/07/2009 | Clerk, U.S. District Court, Western Dist. Michigan Admission Fee - David L. Rieser | 175.00 |
| 1/7/2009 | U.S. District Court Clerk - Petition for Admissions, USDC, Western District of Michigan for Brian O'Meara | 175.00 |
| | | $ 375.80 |

Judgment should enter in favor of plaintiff for the remaining, unobjected-to litigation expenses of $3,992.88.

## Conclusion

The comments made in this report and recommendation concerning the fees sought by plaintiff are not intended to reflect on the competence or integrity of plaintiff's counsel. The billing and staffing practices of the nation's largest law firms are designed to ensure excellent results in high-stakes, complex matters. They plainly are not calibrated for routine lawsuits with a limited amount in controversy. It is doubtful that any major firm could handle litigation of this magnitude efficiently, unless it changed its billing and staffing policies markedly to suit the nature of the case. Regardless of the etiology of the problem, amassing fees of $190,000 to collect on a $200,000 letter

of credit is plainly unreasonable, in a case involving no significant discovery, no depositions, and not a single court appearance.

I recommend that plaintiff's motion for attorney's fees and expenses be granted in part and denied in part, and that judgment be entered in favor of plaintiff for $74,471.31 in attorney's fees and $3,992.88 in taxable costs and litigation expenses.


Dated:  June 16, 2010                          /s/  Joseph G. Scoville
                                               United States Magistrate Judge


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).