UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

―――――――――――――――――――――――――――

INTERNATIONAL-MATEX TANK TERMINALS - ILLINOIS,

    Plaintiff,

v.

CHEMICAL BANK, a Michigan state-chartered bank,

    Defendant.

―――――――――――――――――――――――――――

Case No. 1:08-cv-1200

HONORABLE PAUL L. MALONEY

Magistrate Judge Joseph G. Scoville

**Order**

**Adopting the R&R in Full Regarding Attorneys' Fees;
Overruling the Plaintiff's Objections;**

**Adopting the R&R in Full Regarding Costs;**

**Directing Defendant to Pay Fees and Costs to Plaintiff No Later than October 29, 2010**

During the relevant time period, plaintiff International-Matex Tank Terminals-Illinois ("Matex") operated petroleum and chemical storage facilities in Lemont and Joliet, Illinois. *See International-Matex Tank Terminals-Illinois v. Chemical Bank*, No. 1:2008-cv-1200 Doc. 59, 2009 WL 3270276, *1 (W.D. Mich. Oct. 5, 2009) ("*Matex 4*"). In December 2006, Matex executed a written contract wherein it leased a fuel storage tank to non-party General Sales and Service, Inc., d/b/a Torco Racing Fuels ("Torco" and "the Torco contract") for three years, in return for monthly payments from Torco. *See Matex 4*, 2009 WL 3270276 at *1. The contract required Torco to obtain a letter of credit ("LOC") to serve as security for those monthly rental payments. *Id.* On September 13, 2007,

Torco obtained an LOC from defendant Chemical Bank ("Chem") in favor of Matex, with a limit of $200,000 in aggregate "drawing" rights for Matex.

Torco missed numerous monthly rental payments, and by June 2008 it owed Matex more than $28,000. *See Matex 4*, 2009 WL 3270276 at *1. Matex sent a Default Letter to Torco on June 19, 2008 demanding payment within fifteen days; when Torco failed to pay, Matex sent a letter on July 18, 2008 stating that it was accelerating liability for the monthly payments that would have come due during the rest of the 3-year contract, for a total of about $274,000. *Id.* The lack of payments from Torco caused Matex to present a "draw" on the LOC, in the maximum amount of $200,000, on July 28, 2008. *Id.* Chem refused to honor the Draw. *Id.*

On the parties' timely cross-motions, this court granted summary judgment to plaintiff Matex by opinion and order issued October 5, 2009.[1] That order also directed the parties as follows:

> No later than Monday, November 23, 2009, the parties **SHALL JOINTLY FILE** a notice stating the total amount which the defendant owes to the plaintiff as a result of today's opinion and judgment, including, as applicable, any damages owing under MICH. COMP. LAWS § 440.5111(1), pre-judgment interest under state law, post-judgment interest under federal law, and attorneys' fees and costs under MICH. COMP. LAWS § 440.5111(4) or other applicable authority.
>
> [footnote 8 in original] The parties are advised that "[w]hen a federal court enters a judgment for monetary damages on a state-law claim, 'federal law controls post-judgment interest but state law governs awards of prejudgment interest.'" *Pinika, LLC v. MetLife, Inc.*, – F. Supp.2d –, –, 2009 WL 2713262, *12 (W.D. Mich. Aug. 24, 2009) (Maloney, C.J.) (quoting *Estate of Riddle v. So. Farm Bur. Life Ins. Co.*, 421 F.3d 400, 409 (6th Cir. 2005)). Postjudgment interest is mandatory under 28 U.S.C. § 1961(a).

---

[1] Plaintiff Matex moved for leave to file a sur-reply brief, complaining that Chem had raised an argument for the first time in its reply brief which was not raised in its opening brief. The court declined to allow Matex's sur-reply brief, instead excluding all arguments and evidence which Chem Bank raised for the first time in its reply. *See IMTT v. Chem Bank*, No. 1:2008-cv-1200 Doc. 50, 2009 WL 1651291 (W.D. Mich. June 11, 2009) (Maloney, C.J.) ("*Matex 2*"). The court likewise denied Chem's motion to file an additional brief. *See IMTT v. Chem Bank*, No. 1:2008-cv-1200 Doc. 51, 2009 WL 2423756 (W.D. Mich. Aug. 4, 2009) (Maloney, C.J.) ("*Matex 3*").

> *See Pinika*, – F. Supp.2d at –, 2009 WL 2713262 at *12 (citing *Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 586 (6th Cir. 2002)).
>
> [footnote 9 in original]  If the parties cannot agree on the amount which the defendant owes to the plaintiff, the notice should identify their areas of disagreement and concisely state their respective positions.  In such event, this court will refer the matter to the Magistrate Judge for determination pursuant to 28 U.S.C. § 636(b).

*Matex 4*, 2009 WL 3270276 at *12 (Doc. #59) (capitalization and boldface in original).

On Monday, November 23, 2009, the parties timely filed a joint notice briefly summarizing their positions on damages.  Because the defendant contends that the plaintiff unnecessarily complicated and prolonged the case – thereby allegedly inflating the plaintiff's own attorneys' fees – it is useful to review the parties' positions on damages, even though the damages issue itself has been resolved.  The parties summarized their positions on damages as follows:

> IMTT prepared the attached summary, which sets forth the total damages that IMTT requests. (Exhibit A hereto).  IMTT tendered the attached summary to Chemical Bank.  On or about October 28, 2009, Chemical Bank indicated that it believed that fuel was still contained in the tank at the time the Torco Contract was terminated and, therefore, the value of the alleged remaining fuel should offset any recovery.  On that same date, IMTT advised Chemical Bank that no fuel remained in the tank at the time Torco defaulted.  To support this point, IMTT provided Chemical Bank, on November 23, 2009, with a document dated June 30, 2008, which indicates that the "physical inventory at the end of the month" was "0."  Chemical Bank advised that it did not have any documents to support IMTT's contention.
>
> Further, it is IMTT's position that Chemical Bank failed to plead an affirmative defense of mitigation of damages and, therefore, Chemical Bank has waived that affirmative defense.  Chemical Bank argues that FED. R. CIV. P. 15(b) allows Chemical Bank to add affirmative defenses when it "will promote the prosecution of the merits of the action, the adverse party will not be prejudiced by the late assertion of the defense, and [the party seeking amendment to add such a defense] has ample opportunity to meet the issue."
>
> IMTT counters that Chemical Bank should have raised this issue long ago and that IMTT will be prejudiced if Chemical Bank is allowed to raise mitigation for the first time after summary judgment has been briefed and decided.
>
> Finally, on November 23, 2009, IMTT provided Chemical Bank with a copy of Section 440.5111 of the Michigan Compiled Laws, which provides in part that "[t]he claimant

is not obligated to take action to avoid damages that might be due from the issuer under this subsection." Accordingly, IMTT asserts that even if fuel remained in the tank, IMTT had no obligation to avoid damages under Section 440.5111. Chemical Bank responded by citing the portion of the statute that provides that "[i]f, although not obligated to do so, the claimant avoids damages, the claimant's recovery from the issuer must be reduced by the amount of damages avoided."

Attorneys' Fees
IMTT provided Chemical Bank with a detailed summary of the attorneys' fees incurred by IMTT. Chemical Bank claims that IMTT's attorneys' fees are excessive. IMTT's position is that it did everything possible to streamline this litigation, including the filing of the successful motion for summary judgment shortly after the commencement of the action. Chemical Bank argues that IMTT filed the initial pleadings in the incorrect U.S. District Court which, *inter alia*, resulted in excessive legal fees.

IMTT maintains that the Northern District of Illinois had jurisdiction over the parties. However, rather than engage in protracted briefing on the issue, IMTT asserts that it agreed to transfer the case to the Western District of Michigan to save time and expense.

Additional Briefing
* * * It is IMTT's position that this Court should grant the full amount requested in Exhibit A hereto and that no additional briefing is necessary. It is Chemical Bank's position that additional discovery must be conducted in order to ascertain the true value of the damages that have been avoided. However, if this court requests additional briefing on the issue, the Parties will do so.

IMTT reserves the right to amend its request for attorneys' fees and costs to reflect the time spent on this matter after October 31, 2009, and to update the post-judgment interest to reflect interest after November 23, 2009. Chemical Bank reserves the right both a request for additional attorney fees and post-judgment interest regarding the matter of damages.

Doc. #60 at 2-4 (some paragraph breaks added). As of November 2009, Matex sought the following:

$ 200,000.00  Damages
$     8,903.00  Pre-judgment interest (until the October 5, 2009 grant of summary judgment)
$        173.19  Post-judgment interest under 28 U.S.C. § 1961(a) (Oct. 5 - Nov. 23, 2009)
$ 124,721.74  Attorneys' Fees and Costs (through Monday, November 23, 2009)
_____
$ 333,798.16  Total

Doc. #60, Ex. A. As noted above, that amount did not include any attorneys' fees and costs which Matex incurred after November 23, 2009.

-4-

**On December 3, 2009, this court referred these matters to U.S. Magistrate Judge Joseph G. Scoville ("the Magistrate") for disposition pursuant to 28 U.S.C. § 636(b)(1)(A):**

>the propriety of allowing Chemical Bank to amend its answer to assert the affirmative defense of mitigation of damages;

>if applicable, the effect of Matex's mitigation or lack thereof;

>all other issues relating to the determination of damages and attorneys' fees and costs.

Doc 61.

<u>Damages Have Been Resolved.</u>  On December 8, 2009, the Magistrate authorized the parties to conduct discovery limited to the issue of mitigation of IMTT's damages until January 15, 2010, *see* Doc 64.  On January 21, 2010 the Magistrate held a telephonic status conference, issued an order clarifying the scope of permissible mitigation discovery, and directed the parties to file a joint status report, *see* Doc 68.  The parties filed the joint status report on March 3, 2010 (Doc 69), and the Magistrate held a second telephonic status conference on March 5, 2010 (Doc 70).  As directed by the Magistrate, the parties filed briefs on the issue of damages in March and April 2010 (Docs 72 and 80).  On April 29, 2010 the Magistrate issued a Report and Recommendation ("R&R") on damages (Doc 83), which the court adopted without objection on May 28, 2010, *see IMTT v. Chem Bank*, No. 1:2008-cv-1200 No. 88, 2010 WL 2219366 (W.D. Mich. May 28, 2010) (Maloney, C.J.).  On that same date, the court entered final judgment in favor of plaintiff IMTT in the amount of $213,361.01 "plus interest thereon at the statutory rate."  Doc 89.

On June 25, 2010, defendant Chem Bank filed a notice of appeal with the United States Court of Appeals for the Sixth Circuit (Doc 91).  On that same date, Chem Bank also filed a motion to stay execution on the judgment pending appeal (Doc 92), which the Magistrate denied without prejudice on June 29, 2010 (Doc 93) because Chem Bank failed to establish the propriety of a stay not secured

by a *supersedeas* bond. Chem Bank filed a supersedeas bond on July 2, 2010 (Doc 95), and on July 9, 2010 the Magistrate issued a stay of execution on the monetary judgment pending conclusion of the appeal (Doc 97).[2]

The Continuing Dispute over Attorneys' Fees.

Plaintiff Matex filed a motion for an award of about $156,000 in attorneys' fees and $4,300 in costs incurred in pre-judgment proceedings (Doc 81), and defendant Chem Bank filed an opposition brief (Doc 83). Matex then supplemented its motion with a request for approximately $34,000 more in fees and costs incurred in post-judgment proceedings (Doc 85). In total, Matex seeks approximately $190,000 in attorneys' fees and costs on work done to secure recovery on a $200,000 letter of credit ("LOC"). On June 16, 2010, the Magistrate issued an R&R suggesting that Matex's request is "grossly excessive as to both the hourly rates claimed and the number of hours expended." Doc 90 at 2. Plaintiff Matex filed objections on June 30, 2010 (Doc 94), triggering *de novo* review of the portions of the R&R to which it specifically and sufficiently objected, and defendant Chem Bank filed a response on July 13, 2010 (Doc 99). **For the reasons which follow, as opposed to the roughly $190,000 in fees and costs sought by plaintiff Matex, the court will award Matex (a/k/a IMTT) the far lesser amount recommended by the Magistrate.** *See generally O'Connor v. TransUnion, LLC*, 2008 WL 4910670, *6 (E.D. Mich. Nov. 13, 2008) (Cleland, J.) ("Determining reasonable attorneys' fees is not an exact science, but the court is left with no choice but to dramatically reduce

---

[2] "The notice of appeal does not deprive the Court of jurisdiction to determine the amount of the attorney fee award because the issue of attorney fees is collateral to the main cause of action." *Garber v. Shiner Enters., Inc.*, 2007 WL 4557857, *1 n.1 (W.D. Mich. Dec. 21, 2007) (Gordon Quist, J.) (citing *AAA Venetian Blind Sales, Inc. v. Beaulieu of America, Inc.*, 1997 WL 476517, *4 (6th Cir. Aug. 9, 1997)).

the attorney fee award in this case.").

A federal court sitting in diversity, of course, must apply federal procedural law and state substantive law. Where, as here, "the determination of whether to award attorney fees depends on the underlying substantive claim, the issue is substantive in nature." *Streamline Packaging Sys., Inc. v. Vinton Packaging Group, Inc.*, 2008 WL 227851, *1 (W.D. Mich. Jan. 25, 2008) (Maloney, J.) (citing, *inter alia*, *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 260 n.31 (1975) and *Degussa Admixtures, Inc. v. Burnett*, 2007 WL 1041188, *3 (W.D. Mich. Apr. 4, 2007) (Robert Holmes Bell, C.J.)). Neither party challenges the Magistrate's general statement of the governing law, and the court accepts that statement, *see* R&R at 2-4 (applying Michigan substantive law as set forth in *Smith v. Khouri*, 751 N.W.2d 472 (Mich. 2008) and MICH. R. PROF. CONDUCT 1.5(a)). *See also Streamline*, 2008 WL 227851 at *2 ("In Michigan, a trial court may award a reasonable attorney fee, regardless of the actual attorney fee incurred.") (citing *Head v. Philips Camper Sales & Rental, Inc.*, 234 Mich. App. 94, 114, 593 N.W.2d 595, 604 (Mich. App. 1999) (C.J. Corrigan, MacKenzie, former Mich. S.Ct. J. Robert P. Griffin) (citing *Smolen v. Dahlmann Apts., Ltd.*, 186 Mich. App. 292, 463 N.W.2d 261 (Mich. App. 1990) (P.J. Cavanagh, Richard Allen Griffin, Jansen)).

Under Michigan law, the party seeking attorney's fees bears the burden of proving that the requested fees are reasonable, *see Smith*, 751 N.W.2d at 478, 481 Mich. at 528-29, and plaintiff Matex has not carried that burden here. *See also Poly-Flex Const., Inc. v. Neyer, Tiseo & Hindo, Ltd.*, 600 F. Supp.2d 897, 916 (W.D. Mich. 2009) (Maloney, C.J.) ("An itemized bill in itself is not always sufficient to establish that the requested fees are reasonable, and the court need not accept bills on their face.") (citing *Petterman v. Haverhill Farms, Inc.*, 125 Mich. App. 30, 335 N.W.2d 710, 712 (Mich. App. 1983)). **For the reasons that follow, the court finds the R&R to evince Magistrate Judge**

**Scoville's customary thoughtful, evenhanded analysis.**

<u>The Magistrate's Determination of Reasonable Hourly Rate</u>.

This litigation spanned 2008-2010. Plaintiffs' counsel are based in Chicago and seek hourly rates far higher than those customarily prevailing in West Michigan for attorneys of comparable skill, experience and reputation for similar legal services, namely:

| | |
|---|---|
| $500-540-585 | for attorney Rieser in 2008-2009-2010 |
| $355-425-465 | for attorney O'Meara in 2008-2009-2010 |
| $315-315 | for attorney Chester in 2008-2009 |
| $320-320 | for attorney Lange in 2009-2010 |
| $355 | for attorney Woltman in 2010 |

Plaintiffs' counsel attempts to rely on federal decisions which permit the use of higher rates for out-of-state counsel where evidence showed that there were no local attorneys who had the requisite resources, expertise and/or willingness to represent the prevailing party, namely *Brian A. v. Hathaway*, 83 F. App'x 692, 695 (6th Cir. 2003) and *Maceira v. Pagan*, 698 F.2d 38, 40 (1st Cir. 1983). The Magistrate correctly rejects plaintiff's argument on this score, noting that Michigan law governs and that the plaintiffs do not identify any Michigan state-court precedents recognizing such an exception to the local-rate rule of *Smith*, 751 N.W.2d at 479, and MICH. R. PROF. C. 1.5(a), *see* R&R at 6-7. Indeed, WestLaw shows not a single decision, let alone a decision by a Michigan court, which cites the pertinent portion of our Circuit's *Brian A* decision.

In any event, plaintiffs' counsel did not provide the Magistrate with actual *evidence* that there were no local attorneys in the Western District of Michigan, or Michigan generally, who had the requisite resources, expertise and/or willingness to represent them competently in this unexceptional commercial litigation. *Contrast Brian A.*, 83 F. App'x at 695 (in determining that district court did

not abuse its discretion in finding that plaintiffs needed to hire out-of-state counsel, who charged a higher rate than typical in-state counsel, panel noted, "The plaintiffs submitted affidavits from Tennessee experts in child and family law, who were familiar with the issues involved in the case and opined that there was no local attorney or coalition of attorneys who had the resources, expertise, or willingness to bring the instant suit."). On this record, having freely agreed to represent plaintiff Matex when the case made its way to the Western District of Michigan, plaintiffs' counsel cannot now complain that their adversary is being required to reimburse them "merely" at the hourly rates prevailing in this same district. *Accord Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000) ("when a counsel has voluntarily agreed to represent a plaintiff in an out-of-town lawsuit, thereby necessitating litigation by that lawyer, primarily in the alien locale of the court in which the case is pending, the court should deem the 'relevant community' for fee purposes to constitute the legal community within that court's territorial jurisdiction.") (citing *Hudson v. Reno*, 130 F.3d 1193, 1208 (6th Cir. 1997)); *see, e.g., Baskin-Robbins Franchised Shops, LLC v. Livonia Ice Cream #809, Inc.*, 2007 WL 4181422, *2 (E.D. Mich. Nov. 27, 2007) (Cleland, J.) ("The court further concludes that an hourly rate of $250, which represents the median rate for attorneys in large law firms practicing in southeast Michigan, is suitable to compensate the D.C. attorneys in light of the local market rate . . . .").

Next, the Magistrate correctly chooses to rely on the median hourly rates, for attorneys of comparable experience, reported in the State Bar of Michigan's 2007 Economics of Law Practice Survey: $200 per hour for an attorney with 27 years experience such as Rieser, and $175 per hour for the less-experienced attorneys O'Meara, Chester, Lange, and Woltman, *see* R&R at 7-8. Both the Michigan Supreme court in *Smith v. Khouri* and various Michigan Court of Appeals panels have

endorsed the trial courts' practice of consulting and generally following the hourly rates reported by the Practice Survey. *See Sutherland v. Kennington Truck Servs., Ltd.*, 2002 WL 87502, *1 (Mich. App. Jan. 22, 2002) (per curiam) (Cooper, Richard Allen Griffin, Saad) ("[T]o determine a reasonable hourly or daily rate, a trial court may consider empirical data contained in the Law Practice Survey, and other reliable studies . . . .") (citing, *inter alia*, *Jernigan v. GMC*, 180 Mich. 575, 587, 447 N.W.2d 822 (Mich. App. 1989)). As a general matter, both the Michigan state courts and federal courts in Michigan commonly use the Practice Survey as, at the minimum, *accord Zanon v. Comm'r of Soc. Sec.*, 2010 WL 1524143, *1 (E.D. Mich. Apr. 15, 2010) (Avern Cohn, J.) (State Bar survey is "a starting point in determining a reasonable fee"). Most often the state and federal courts alike award precisely or very nearly the applicable rate derived from the most recent survey. *See, e.g., Feldman v. Oakland Univ. Bd. of Trustees.*, 2010 WL 2572768, *5 (E.D. Mich. June 23, 2010) (Patrick Duggan, J.); *Poly-Flex Const., Inc. v. Neyer, Tiseo & Hindo, Ltd.*, 600 F. Supp.2d 897 (W.D. Mich. 2009) (Maloney, C.J.); *Sykes v. Anderson*, 2008 WL 4776837, *5 with nn. 10-12 (E.D. Mich. Oct. 31, 2008) (Nancy Edmunds, J.); *FTSS Korea v. First Technology Safety Sys., Inc.*, 254 F.R.D. 78, 81 (E.D. Mich. 2008) (David Lawson, J.); *Kirby v. Grand Traverse Cty. Sheriff's Dep't*, 2009 WL 3234147, *2 (W.D. Mich. Sept. 30, 2009) (Bell, C.J.) ("The survey reflects that the median litigation rate charged by attorneys with 20-29 years in practice is $200 per hour. * * * The performance of plaintiff's counsel in this case does not warrant a fee in excess of the median rate.").

More specifically, the Magistrate is correct to apply the *median* hourly rates, not the hourly applicable to some upper-percentile on the Practice Survey table. This is consistent with the Michigan Supreme Court's observation, *Smith*, 751 N.W.2d at 481, that although some trial attorneys obviously have rates far higher than others, "reasonable fees are different from the fees paid to the top lawyers

by the most well-to-do clients." *See, e.g., Heaton v. Benton Const. Co.*, 286 Mich. App. 528, 543, 780 N.W.2d 618, 627 (Mich. App. 2009) (per curiam) (P.J. Murray, Markey, Borrello) (trial court did not abuse discretion in awarding hourly rate of $185, as opposed to the $225 rate requested by plaintiffs' counsel; requested rate was in 75th percentile of rates in 2007 Michigan Practice Survey, and "because the instant case was not overly complex, a reasonable attorney fee rate was in the court's locality was closer to the median hourly rate of $195 according to [the] same study."). In any event, plaintiffs' counsel failed to demonstrate to the Magistrate, and fails to demonstrate to this court, that this case was so conceptually complex or so challenging, or that their unique experience or performance in this case was otherwise so extraordinary, as to warrant an hourly rate at some percentile above the median of the state bar survey. *Contrast Hyldahl v. AT&T*, 2009 WL 2567197, *3 (E.D. Mich. Aug. 17, 2009) (Thomas Ludington, J.) (although median rate in bar survey for someone of counsel's experience was $175 per hour, court awarded $200 per hour "[i]n light of the complexity of the issues involved [and counsel's] unique experience in this field of practice").

Nor does plaintiff Matex provide any basis for disturbing the Magistrate's refusal to force the defendant to shoulder the drastic rate increases which plaintiff's counsel charged its clients in the years since the 2007 Michigan Survey. In a period of generally historically low inflation, attorney Rieser's hourly rate jumped 8% from 2008 to 2009 and another 8.3% from 2009 to 2010 (from $500 per hour to $585 in just two years), while attorney O'Meara's hourly rate jumped almost 20% from 2008 to 2009 and another 9.4% from 2009 to 2010 (from $355 to $465 in just two years). Without expressing an opinion on the Magistrate's characterization of such increases as "disastrous" and "a major cause of the economic dislocation now facing many major law firms", the court endorses the Magistrate's prudent decision (R&R at 8-9) to increase the 2007 Michigan Survey median rates only as necessary

to reflect the annual cost-of-living inflation rates calculated by the federal Department of Labor, *accord Allshouse v. Comm'r of Soc. Sec.*, 2009 WL 4884968, *7 (E.D. Mich. Dec. 11, 2009) (Arthur Tarnow, J.)( "The Court will adjust the rate with the CPI-U [Consumer Price Index for All Urban Consumers] from the release date of the survey at issue, April 2007 . . . to August 2008 when Plaintiff became a prevailing party . . . .").

**In objection to the Magistrate's hourly-rate recommendation, plaintiff Matex contends that the court should adjust the hourly rates upwards to reflect defendant Chem Bank's allegedly unreasonable conduct in prolonging and complicating this litigation.** *See* P's Objections at 6-7. Matex, however, cites no binding Michigan precedent whatsoever as authority for such a course of action. That is, Matex identifies no decision of a majority (or even plurality) of the Michigan Supreme Court, and no published decision of the Michigan Court of Appeals, which authorizes a trial court to increase hourly rates to reflect the losing party's alleged unreasonable litigation conduct. Rather, Matex relies only on a concurring opinion which spoke for only two members of the Michigan Supreme Court, author Justice Young joined by then-Chief Justice Taylor – and even there, Justice Young was merely concurring in the Court's denial of leave to appeal, *see Beach v. Kelly Auto. Group, Inc.*, 757 N.W.2d 868, 868-71 (Mich. 2008) (Young, J., concurring in the judgment, joined by Taylor, C.J.). Standing alone, an opinion speaking for only two members of the seven-member Supreme Court has little or no predictive value as to how the full Court would rule if confronted with the issue today. This is particularly true where, as here, one of the Justices joining the opinion (Taylor), has since left the Court.

In any event, the Magistrate did carefully consider defendant Chem Bank's litigation conduct and took it into account in fashioning Matex's fee award. And the court agrees with the legal

conclusions and general thrust of the Magistrate's well-reasoned opinion on this score. Matex argues as follows,

> Chemical Bank can be assumed to be a sophisticated commercial entity with full knowledge of its responsibilities in issuing letters of credit under the UCP and Michigan law. Having failed to satisfy the basis [sic, should be conditions] for dishonoring the Draw within the requisite time, under black letter Michigan law, Chemical Bank instantly lost all of its defenses and, as this Court held, had no further basis to refuse to pay. Under black letter law, Chemical Bank's dishonor was wrongful and subjected Chemical Bank to statutory attorney's fees.
>
> At this point, Chemical Bank had a decision to make; it could either pay on the Letter of Credit to avoid all further transaction costs or it could attempt to use the legal process to delay its judgment day, incurring both its own legal expenses and potentially those of its opponent. Chemical Bank chose the latter course. In pursuing this course, as described in detail above, Chemical Bank asserted numerous defenses, most of which were both baseless and untimely. For example, Chemical Bank – without the slightest shred of evidence – claimed fraud to evade the consequences of failing to timely notify IMTT of presentment defects. Further, in order to justify its refusal to agree on the damages, Chemical Bank asserted that IMTT failed to mitigate its damages, again without a shred of proof and without having even raised the issue as an affirmative defense.
>
> * * * From any legal or economic standpoint, Chemical Bank must accept full responsibility for the fees and costs of this action and not just "some of the blame." (Report, p. 11). Had it agreed to pay on the Letter of Credit, as there was no doubt it was required to do, there would have been no fees. Had Chemical Bank not decided to extend this litigation by asserting baseless defenses, IMTT's counsel would not have had to expend the time necessary to respond. While adversaries are required to zealously defend their clients, they cannot at the same time avoid the impact of a statutory fee shifting requirement.
>
> The Magistrate Judge opines that IMTT could have responded to these claims with less effort because they were so baseless. Sadly, lawyers do not have the advantage of knowing beforehand whether a judge will characterize a claim as baseless and, therefore, advocacy and argument is required. This litigation could have been avoided and it could have been straightforward. That it was not straightforward was not due to any action of IMTT or its counsel, but rather the actions of Chemical Bank.

P's Objections at 6-8. The court agrees with IMTT that Chemical Bank could, and should, have either paid the letter of credit, or at least reached an amicable resolution during the litigation without the need

for the expense of a dispositive motion and other proceedings. But the Magistrate's recommendation, which recommends an award of $74,471.31 rather than the $190,000-plus sought by Matex, already sufficiently attributes significance to Chem Bank's unjustified insistence on continuing to defend this suit.

The court will not become further embroiled in the minutiae of the time entries except to say that neither Matex's objection nor anything in the record undermines the remainder of the Magistrate's recommendation on the reasonable number of hours expended by its counsel. "The United States Supreme Court has repeatedly cautioned that resolution of fee petitions should not become a 'second major litigation.'" *Communities for Equity v. Michigan H.S. Athletic Ass'n*, 2008 WL 906031, *1 (W.D. Mich. Mar. 31, 2008) (Richard Alan Enslen, J.) (citing, *inter alia*, *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Resources*, 532 U.S. 598, 609 (2001)). Namely, the court otherwise agrees with the Magistrate's substantial reduction of partner Rieser's hours, *see* R&R at 12-13; his substantial reduction of the billable time of associates Chester and Lange, *see id.* at 13-14; his elimination of almost twenty hours which plaintiff's counsel spent opposing the defendant's motion to dismiss or to transfer the case from the Northern District of Illinois for improper venue, *see id.* at 14-16; disallowance of attorney O'Meara's time related to obtaining admission to this district's bar, *see id.* at 16-17; reduction of time billed in relation to the battle over damages, *see id.* at 17-19; dramatic reduction of time billed for preparation of the fee petition itself, *id.* at 19-20; complete disallowance of the supplemental fee petition's conclusory, unsupported requests for time allegedly spent between May 1 and May 17, 2010, *id.* at 21; and complete disallowance of "fees" for work by non-attorneys, i.e., paralegals, librarians and clerical staff, *id.* at 21-22.

The court also accepts the Magistrate's calculation of $3,992.88 in reasonable costs (as

opposed to the $4,316.60 sought by plaintiff Matex), *see* R&R at 25-26, which Chem Bank did not challenge before the Magistrate and which Matex has not challenged in its objections here.

**ORDER**

Plaintiff's objections **[doc # 94] are OVERRULED.**

The Report and Recommendation issued on June 16, 2010 **[doc # 90] is ADOPTED**.

The plaintiff is awarded $74,471.31 in attorneys' fees and $3,992.88 in costs.

No later than Friday, October 29, 2010, defendant **SHALL PAY** to plaintiffs' counsel the amount of $ 78,464.19 (seventy-eight thousand four hundred sixty-four dollars and nineteen cents), plus interest from the date of this order through and including the date on which payment is delivered or transmitted to the plaintiffs' counsel.

The parties shall confer and agree on the amount of said interest, and the court does not anticipate entertaining further disputes over attorney fees and costs.

This is a final and appealable order.

**IT IS SO ORDERED this 16th day of August 2010.**

/s/ Paul L. Maloney
Honorable Paul L. Maloney
Chief United States District Judge